COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Lemons and
          Senior Judge Duff
Argued at Alexandria, Virginia


R. KEITH HASTIE
                                        OPINION BY
v.    Record No. 0958-98-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        JUNE 1, 1999
ELLEN D. HASTIE


          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                  Thomas S. Kenny, Judge

          David D. Masterman (Condo & Masterman, P.C.,
          on briefs), for appellant.

          Richard J. Colten (Surovell, Jackson,
          Colten & Dugan, P.C., on brief), for
          appellee.


     R. Keith Hastie (husband) appeals the entry of a qualified

domestic relations order (QDRO), pursuant to Code

§ 20-107.3(K)(4), which he alleges materially increased the

amount to be paid from his pension to Ellen D. Hastie (wife).

Husband contends on appeal that the QDRO effected a substantive

change to the divorce decree and, under Rule 1:1, the trial

court did not have the authority to modify the decree.  For the

reasons that follow, we reverse and remand the case to the trial

court for entry of a proper QDRO in accordance with the

provisions of Code § 20-107.3(K)(4).

I.

A final decree of divorce entered on February 28, 1988 set forth a payment scheme by which husband would pay wife a portion of the marital share of husband's military retirement pension. The language of the divorce decree provided the following:

> [Wife] be and she hereby is awarded and allocated forty percent (40%) of the marital portion of the [husband's] retirement pension, said marital portion being sixty point one percent (60.1%) of the total pension, payable monthly as received, to-wit, an award to the [wife] of One Hundred Two Thousand Four Hundred Ninety-six Dollars and Forty cents ($102,496.40), payable in the amount of $575.04 each month until paid in full; . . . .

(Emphasis added). The fixed sum of $102,496.40 constituted wife's share as determined by the trial court, or 40% of $256,216, the then present value of the marital portion of the pension.

Beginning in February 1987, husband paid directly to wife her share of the pension as ordered by the trial court. The parties dispute whether husband's payments to wife, which increased over the years, reflected an intentional overpayment by husband to reduce the fixed sum award or a cost-of-living increase. Husband alleged that his payments from February 1987 through March 1996 consisted of the court-ordered $575.04 per month plus any additional amounts he chose to pay in order to retire the debt sooner. Wife alleged that husband's payments increased over the years to

- 2 -

reflect the 40% of the marital share of his monthly installments, which included normal cost-of-living increases.

In March 1996, wife submitted the divorce decree to the Defense Finance and Accounting Service (DFAS), which administers the military retirement program. She sought and began receiving direct payment from DFAS of her share of husband's retired pay in the amount of $575.04 per month. In December 1996, husband moved the trial court for the entry of an order pursuant to Code § 20-107.3(K)(4) to conform its terms to the express intent of the final decree to allow wife to receive a total of $102,496.40 and no more. Consequently, wife also moved the trial court for a "clarifying order" specifying her entitlement to the decreed percentage of husband's pension without a cap.

At the hearing on this matter, husband contended the pension award to wife in the original decree was the fixed sum of $102,496.40, payable to her at the rate of $575.04 per month until that fixed sum was paid in full, as stated in the order. Husband sought to have the trial court specify the remaining unpaid balance of wife's share, taking into account payments made in the total amount of $85,774.24 as of the date of hearing. Wife argued that the divorce decree awarded her 40% of the marital share of husband's

pension, payable monthly so long as he continued to receive military retired pay.

In its letter opinion, the trial court concluded that the divorce decree awarded wife 40% of the marital share of husband's military pension, as opposed to the fixed sum of $102,496.40. The trial court wrote:

> Therefore, the inclusion of the present value of the retirement pension in the Final Decree of Divorce was not a statement of [wife's] award. Instead, the Final Decree made an award of the percentage of the pension without regard to the present value. The Final Decree of Divorce awarded [wife] a 40% share of [husband's] retirement pension, as long as [husband] receives payments. Any reference to present value is mere surplusage and without effect.

Accordingly, the trial court entered the following clarifying order:

> 2. The order of the Court with regard to the division of retired pay contained in the Final Decree awards to the [wife] forty percent (40%) of the marital share of [husband's] retired pay, said marital portion being sixty point one percent (60.1%) of [husband's] total retired pay, payable to [wife] at the rate of forty percent (40%) of the marital share of each monthly installment of retired pay from and after February 1, 1987, for as long as the [husband] receives payments of retired pay or until [wife's] earlier death.

At wife's request, the clarifying order also contained the necessary provisions to establish a QDRO and enable wife to receive her allocable share of the retired pay by direct payment from DFAS.

On appeal, husband contends the original divorce decree was a final, non-appealed order. Additionally, husband argues that the trial court erroneously modified the divorce decree under Code § 20-107.3(K)(4) by making a "significant and material modification" to the terms of the original order. We agree.

It is well settled that equitable distribution orders become final within twenty-one days of entry. See Rule 1:1; see also Fahey v. Fahey, 24 Va. App. 254, 256, 481 S.E.2d 496, 497 (1997) (en banc). Thereafter, the court's power to modify such orders is governed by Code § 20-107.3(K)(4), which provides:

> The court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority to:
>
>     *       *       *       *       *       *       *
>
> Modify any order . . . intended to affect or divide any pension, profit-sharing or deferred compensation plan or retirement benefits pursuant to . . . federal laws, only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

(Emphasis added); see also Fahey, 24 Va. App. at 257, 481 S.E.2d at 497. The QDRO may not "modify a final divorce decree simply to adjust its terms in light of the parties' changed circumstances" but must be "consistent with the substantive provisions of the original decree." Caudle v. Caudle, 18 Va.

- 5 -

App. 795, 798, 447 S.E.2d 247, 249 (1994); see also Fahey, 24 Va. App. at 256-57, 481 S.E.2d at 497.

In the instant case, it is uncontested that wife did not request an amendment or clarification of the divorce decree within twenty-one days of its entry and did not appeal to this Court the trial court's decision regarding the provision of husband's pension.[1]  Accordingly, any clarification or modification of the divorce decree must be "consistent with the substantive provisions of the original decree."  Caudle, 18 Va. App. at 798, 447 S.E.2d at 249.

We have previously held that orders that alter critical terms of the contract, such as timing or amount of payments, exceed the authority granted under Code § 20-107.3(K)(4).  See, e.g., Fahey, 24 Va. App. at 256, 481 S.E.2d at 497 (holding that the division of the actual value of a Keogh account rather than the agreed value was a substantive change); Decker v. Decker, 22 Va. App. 486, 495, 471 S.E.2d 775, 779 (1996) (holding that reduction in spousal support by amount of mortgage payments on recipient spouse's house was a substantive change).

In the instant case, the clear language and intent of the original divorce decree was to allot wife 40% of the present value of husband's pension on February 28, 1988, a valuation

---

[1]The decree was appealed on March 8, 1988 on grounds irrelevant to this case, at which time the decision of the trial court was affirmed.

method commonly used prior to this Court's holding in Zipf v. Zipf, 8 Va. App. 387, 382 S.E.2d 263 (1989). The specific, unambiguous language of the final decree determines this issue. Wife was awarded 40% of the 60.1% marital portion of husband's pension, "to-wit, . . . $102,496.40, payable in the amount of $575.04 each month until paid in full; . . . ." Read in its entirety, "to-wit" links explicitly the payment to the set amount of $102,496.40 until it is "paid in full."

The trial court modified both the terms of payment and the amount of total payments to be made by husband by imposing an open-ended obligation on husband. More specifically, the QDRO modified the monthly payment from "$575.04 per month" to "forty percent (40%) of the marital share of each monthly installment of retired pay" received by husband. The QDRO also modified the total amount to be paid, effectively changing the requirement that husband pay $102,496.40, payable in monthly installments, "until paid in full." The trial court ordered husband to pay "as long as the [he] receives payments of retired pay or until [wife's] earlier death." Guided by the dictates of Code § 20-107.3(K)(4), we find the trial court lacked authority to order these changes that substantively modified the original divorce decree.

Nevertheless, wife contends that such a conclusion is contrary to the rule annunciated in Zipf, where we rejected limitation of a pension award, payable in the future, to a

- 7 -

"present value calculation" because it denied the benefit of "future earnings and adjustments that are attributable to the . . . deferred share" and its "future appreciation." Id. at 397, 382 S.E.2d at 268-69. As we subsequently explained in Primm v. Primm, 12 Va. App. 1036, 407 S.E.2d 45 (1991), "[i]t is only fair that both parties share in the increased value of the pension." Id. at 1038, 407 S.E.2d at 47.

While Zipf established the rule that a trial court may not limit a pension award, payable in the future, to a present value calculation, that decision came after the original divorce decree in the instant case had been entered and become final. In 1988, wife could have appealed the divorce decree on the pension issue and alleged that the trial court erred in awarding a fixed sum based upon the present value of the pension. However, because wife did not appeal the trial court's divorce decree as it related to that issue, the decree became a final order and the law of this case not subject to later modifications. See Norris v. Mitchell, 255 Va. 235, 240, 495 S.E.2d 809, 812 (1998); Solomond v. Ball, 22 Va. App. 385, 390, 470 S.E.2d 157, 159 (1996).

While the trial court's original method of division later disfavored wife because husband's retirement account increased in value, the trial court was nonetheless without authority to substantively modify the divorce decree. See Code § 20-107.3(K)(4); Fahey, 24 Va. App. at 257, 481 S.E.2d at 497;

- 8 -

<u>Caudle</u>, 18 Va. App. at 798, 447 S.E.2d at 249.  Accordingly, we reverse and remand the case to the trial court for entry of a proper QDRO in accordance with the provisions of Code § 20-107.3(K)(4).

<u>Reversed and remanded.</u>