COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Kelsey and Haley
Argued at Chesapeake, Virginia


KENNETH W. FOLEY

MEMORANDUM OPINION[*] BY
v.        Record No. 0359-05-1                    JUDGE JAMES W. HALEY, JR.
                                          DECEMBER 20, 2005
DONNA L. FOLEY


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Lawrence D. Diehl for appellant.

Kathy Gear Owens for appellee.


I.

The issue here for resolution is whether the trial court (1) erred in its application of the

parol evidence rule to, and its interpretation of, the provisions of a property settlement agreement

dealing with pension and retirement plans and, in so doing, (2) entered a qualified domestic

relations order (QDRO) inconsistent with the substantive provisions of a final divorce decree

adopting that agreement, in contradiction to the provisions of Code § 20-107.3(K)(4).

II.

Separating on July 21, 1995, the parties were divorced by an agreed final decree dated

November 1, 1999, which incorporated a property settlement agreement (PSA) dated and signed

that same day.  The decree contained the following language:  "The Court reserves jurisdiction to

enter the necessary orders to *divide* the Thrift savings plan and FERS owned by the plaintiff

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

pursuant to paragraph <u>IX</u> of the Agreement." (Handwritten insertions are underlined and emphasis added).

As here relevant, sections G(1)(a) and G(1)(b) of paragraph IX read as follows:

> a. **Thrift Savings Plan:** The parties acknowledge that Husband participates in the Federal Employees Retirement System Thrift Savings Plan . . . [and] . . . that a portion of said Thrift . . . Plan assets is marital property and that on or about the time of separation the *value* of the account was $50,025.23.
>
> The Husband agrees that Wife shall be the owner of her share . . . [and] . . . her . . . share shall be $22,500.00. . . . The parties agree that they will sign any document or Order in the preparation of any QDRO, necessary to effectuate the terms of the settlement.

> b. **Civil Service Basic Retirement Benefits:** The parties acknowledge that the Husband has an interest in civil service retirement benefits . . . [and] . . . agree that some *portion* of Husband's *retired pay accrued therein* is or could be marital property. <u>The parties agree to reserve the *division* of the FERS retirement *value* on the date of separation pending receipt of verification of the *amount* on the date of separation from the US govt which has been requested by the husband.</u>

(Handwritten insertions are underlined and emphasis added).

On September 11, 2003, wife filed a motion for entry of a QDRO to effectuate the above quoted provisions of the PSA. An agreed order was entered on January 10, 2005 with respect to the Thrift Savings Plan. However, a dispute arose, the one here for resolution, with respect to the meaning of section G(1)(b), the provision dealing with the Civil Service Basic Retirement Benefits, referred to by the parties, and here, as the FERS plan. Husband contended that the provisions meant that the court was to equitably distribute the value, a determinable sum certain, of his FERS plan on the date of separation. Wife maintained that the provisions meant she was to receive an equitably distributed percentage of husband's retirement payments, if and when he received them.

- 2 -

A hearing on the motion was held on January 12, 2004. Maintaining the language of section G(1)(b) was ambiguous, wife sought to introduce various documents, including government publications explaining and defining civil service retirement benefits, to ascertain its meaning. The court overruled husband's objection raising the parol evidence rule, and received the documents offered by wife, as well as written exhibits offered by husband. No testimony was given by either party at the hearing.

By letter of February 11, 2004, the trial court ruled that "a plain reading of the disputed language can only be interpreted to mean that . . . [wife] . . . is to receive a pro rata share of . . . [husband's] . . . annuity at the time of his retirement." By a QDRO entered January 20, 2005, the trial court awarded wife 50% of the marital portion of the FERS retirement as received by husband. This appeal followed.

III.

Initially we note that the power of a circuit court to enter equitable distribution orders involving pensions, subsequent to the finality of a divorce decree, is limited by the provisions of Code § 20-107.3(K)(4). Such orders may only be entered "to effectuate the expressed intent" of the divorce decree, and, where applicable, the PSA incorporated in that decree. Any order must be "consistent with the substance provisions" of the divorce decree. Caudle v. Caudle, 18 Va. App. 795, 798, 447 S.E.2d 247, 249 (1994). See also Hastie v. Hastie, 29 Va. App. 776, 780, 514 S.E.2d 800, 803 (1999); Fahey v. Fahey, 24 Va. App. 254, 256-57, 481 S.E.2d 496, 497 (1997) (*en banc*).

IV.

"Property settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995). See also Boedeker v. Larson, 44 Va. App. 508, 518, 605 S.E.2d 764, 769 (2004); Shenk v. Shenk, 39 Va. App. 161, 170, 571

S.E.2d 896, 901 (2002); Pellegrin v. Pellegrin, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000). Several principles of contract construction are here applicable.

"We are not bound by the trial court's construction of contract terms, but rather, 'we have an equal opportunity to consider the words within the four corners of the disputed provision.'" T.M. Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002) (quoting Wilson v. Holyfield, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984)). "When an agreement is plain and unambiguous on its face, the Court will not look for meaning beyond the instrument itself." Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 632, 561 S.E.2d 663, 667 (2002). "A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." T.M. Delmarva, 263 Va. at 119, 557 S.E.2d at 200 (citation omitted).

V.

In the instant case the trial court, in permitting parol evidence,[1] concluded the language of section G(1)(b) was ambiguous. "The language of a contract is ambiguous if 'it may be understood in more than one way or when it refers to two or more things at the same time.'" Video Zone, Inc. v. KF&F Properties, 267 Va. 621, 625, 594 S.E.2d 921, 923 (2004) (citations omitted). The issue whether a contract is ambiguous presents a question of law. Utsch v. Utsch, 266 Va. 124, 129, 581 S.E.2d 507, 509 (2003). "On appellate review, we are not bound by the trial court's conclusions regarding an instrument's ambiguity because we are provided with the same opportunity as the trial court to consider the written provisions of the [writing] in question." Pyramid Development, L.L.C. v. D&J Associates, 262 Va. 750, 754, 553 S.E.2d 725, 727 (1999).

In light of the following analysis of the contested paragraph, we conclude that that paragraph is not ambiguous and that, accordingly, the trial court erred in considering extrinsic parol

---

[1] The parol evidence rule operates to exclude both written, as here, and oral evidence. Sale v. Figg, 164 Va. 402, 180 S.E. 173 (1935); Charles E. Friend, The Law of Evidence in Virginia § 20-1, at 829 (5th ed. 1999).

(written) evidence. See Anden Group v. Leesburg Joint Venture, 237 Va. 453, 458, 377 S.E.2d 452, 455 (1989).

With that conclusion, we examine the terms of section G(1)(b) alone.

VI.

"'The guiding light . . . is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.'" Golding v. Floyd, 261 Va. 190, 192, 539 S.E.2d 735, 737 (2001) (quoting Magann Corp. v. Electrical Works, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962)). Additionally, in First Nat. Bank v. Roanoke Oil Co., 169 Va. 99, 115, 192 S.E. 764, 771 (1937), the Virginia Supreme Court of Appeals held that:

> The practical construction put by the parties upon the terms of their own contract is not only to be regarded, but, where there is any doubt, must prevail over the literal meaning of the contract. Knopf v. R., F. & P.R. Co., 85 Va. 769, 8 S.E. 787 [(1889)].
>
> "No rule for the construction of written instruments is better settled than that which attaches great weight to the construction of the instrument by the parties themselves." Holland v. Vaughan, 120 Va. 324, 91 S.E. 122, 124 [(1917)]; Chick v. MacBain, 157 Va. 60, 160 S.E. 214 [(1931)]; 6 R.C.L. 853.

See also Galloway Corp. v. S.B. Ballard Constr. Co., 250 Va. 493, 503, 464 S.E.2d 349, 355 (1995); American Realty Trust v. Chase Manhattan Bank, 222 Va. 392, 403, 281 S.E.2d 825, 831 (1981); Smith v. Smith, 3 Va. App. 510, 514, 351 S.E.2d 593, 596-97 (1986).

As quoted above, section G(1)(a) of the PSA dealt with the Thrift Savings Plan. The language of the PSA dealing with the FERS plan parallels that dealing with the Thrift plan. As noted above, on January 10, 2005 the parties endorsed an agreed order dividing the "value" of the Thrift Savings Plan on the date of separation. The construction of language of the PSA by the parties dealing with the Thrift Plan is thus of evidentiary import with respect to an interpretation of the parties' intention as to the FERS plan. That construction, along with all

other portions of the PSA dealing with the division of the marital property, contemplated, and effectuated, an immediate, definite, and final disbursement of marital assets. For that reason, it is unnecessary to look beyond the written property settlement agreement to determine the parties' intent.

Another principle of contract construction is here relevant. In <u>Winn v. Aleda Const. Co.,</u> 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984), the Supreme Court of Virginia noted that in interpreting a contract, "No word or clause will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words aimlessly." (Citation omitted). <u>See also</u> <u>Ross v. Craw,</u> 231 Va. 206, 214, 343 S.E.2d 312, 317 (1986). "Parties are not presumed to have included a provision of no effect." <u>Hughes & Co. v. Robinson Corp.</u>, 211 Va. 4, 7, 175 S.E.2d 413, 415 (1970).

In <u>Torian v. Torian</u>, 38 Va. App. 167, 176, 562 S.E.2d 355, 360 (2002) (citation omitted) (emphasis added), this Court recognized two methods for valuing and dividing a defined benefit plan.

> An award may be a percentage of the marital share of the pension, in which case payment is to be made only as retirement benefits are paid . . . [or] . . . the court may also make a monetary award, and in so doing, the court shall consider . . . the *value* of the marital share of a party's retirement or pension plan. The [latter] method of making an award of the *value* of a pension is the immediate offset approach. . . . In order to distribute benefits under the immediate offset approach, the trial court must determine the present *value* of the marital share of those benefits.

The Court continued: "If a trial court orders deferred distribution of the marital share of the pension, it need not determine the pension's present value. Under the deferred distribution approach, 'the present value of the pension is irrelevant.'" <u>Id.</u> at 177, 562 S.E.2d at 360 (quoting <u>Gamble v. Gamble</u>, 14 Va. App. 558, 585, 421 S.E.2d 635, 651 (1992)) (additional citation omitted). <u>See also</u> <u>Gamer v. Gamer</u>, 16 Va. App. 335, 343, 429 S.E.2d 618, 624 (1993).

- 6 -

In Fahey, 24 Va. App. at 256, 481 S.E.2d at 497, a QDRO entered pursuant to a final divorce decree adopting a PSA provided that wife was to receive "one-half of the accrued value" of a Keogh account as of the parties' date of separation. The trial court entered an amended QDRO authorizing the distribution of the plan's assets in kind, though they had increased one-third in value. In reversing, we held that the later QDRO erroneously modified the final decree, in violation of Code § 20-107.3(K)(4), which only provided for the wife to receive one-half the "value" of the account upon the date of separation. Thus, the term "value" was determined to mean a sum certain on a specified date, not a sum (or distribution in kind) augmented by future increase in value. See also Ragsdale v. Ragsdale, 30 Va. App. 283, 289-90, 516 S.E.2d 698, 701 (1999).

In Hastie, 29 Va. App. 776, 514 S.E.2d 800, the final decree granted wife "40% of the marital portion of the [husband's] retired pay" and specified a fixed sum, which the trial court determined as the agreed percentage of the present value of the marital portion, payable in monthly installments from husband's retirement payments. Because of cost of living increases in those payments, husband subsequently asked the court to determine that sums in excess of the monthly installments specified in the decree constituted overpayments to be credited against the fixed sum, that is, 40% of the prior determined present value of the marital portion of his retirement benefits.

In a letter opinion, the trial court in Hastie granted 40% of the pension payments for as long as the husband received the same. That court stated: "Any reference to present value is mere surplusage and without effect." This Court reversed and noted: "the clear language and intent of the original divorce decree was to allot wife 40% of the *present value* of husband's pension." Id. at 781, 514 S.E.2d at 803 (emphasis in original).

In the instant case, the PSA reserved the division of "the FERS retirement value on the date of separation pending receipt of verification of the amount." As noted in Torian, if a pension is to be divided by deferred distribution, as the court here did, there is no need to determine the pension's "value." Such a determination is "irrelevant." In ordering deferred distribution, the trial court in the instant case gave no consideration to the use of the words "value" or "amount" as used in the PSA. It treated those words as "meaningless," thus not following the rule of construction enunciated in Winn.

Finally, the PSA recited that the wife "knows her . . . legal rights" (Article XIV) and that the "provisions . . . [of the PSA] . . . have been fully explained to her" (Article XV). Had the wife, or the parties, intended that the pension was to be divided by deferred distribution, rather than immediate offset, they could have simply agreed to reserve a determination of an equitable percentage of the same, thus eliminating the need to determine the "value" or "amount" of the pension on the date of separation.

## VII.

For the foregoing reasons, we hold the trial court erred as a matter of law in its interpretation of the provisions of section G(1)(b) of PSA, and by so doing, entered a QDRO inconsistent with the substantive provisions of the final decree of divorce incorporating the PSA. Code § 20-107.3(K)(4); Baker v. Baker, 38 Va. App. 384, 387, 564 S.E.2d 164, 166 (2002); Hastie, 29 Va. App. at 781, 514 S.E.2d at 803. Accordingly, the matter is remanded for the court to equitably distribute the FERS retirement value on the date of separation.[2]

---

[2] We note that with respect to pension retirement plans, the concept of "value" is not necessarily limited to the employee's contributions. It may also include the inchoate, but unrealized, contractual value of the employer's obligations. Thus, a valuation method can rely on annuity formulations, see Holmes v. Holmes, 7 Va. App. 472, 479, 375 S.E.2d 387, 391-92 (1988), and be supplemented with other valuation considerations, like "the most appropriate present value discount rate, whether the monthly benefit was subject to adjustment or forfeiture, or whether unusual health problems would affect the calculation factors." Torian, 38 Va. App. at

VIII.

Each party requests an award of attorney's fees. With respect to this request, we have

held:

> The rationale for the appellate court being the proper forum to
> determine the propriety of an award of attorney's fees for efforts
> expended on appeal is clear. The appellate court has the
> opportunity to view the record in its entirety and determine
> whether the appeal is frivolous or whether other reasons exist for
> requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Accordingly, we find

no such circumstances exist and hold that neither party is entitled to costs or attorney's fees in this

matter.

Reversed and remanded.

---

180, 562 S.E.2d at 362 (citing Brett R. Turner, Equitable Distribution of Property § 6.12, at 371-73 (2d ed. 1994)).

Though the FERS provision is unambiguous as to the method of distribution (immediate offset, rather than deferred disposition), it is not so clear as to how the "value" of the plan should be determined.