COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Haley and Senior Judge Bumgardner
Argued at Alexandria, Virginia


DOROTHY D. TOBIN

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1137-05-4                   JUDGE JAMES W. HALEY, JR.
                                                             APRIL 18, 2006
RICHARD J. TOBIN


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Leslie M. Alden, Judge

            Joyce M. Henry-Schargorodski (Shannon L. Kroeger;
            Schargorodski & Associates, PLC, on briefs), for appellant.

            Edward V. O'Connor, Jr., for appellee.


        In this cause, Dorothy D. Tobin (wife) maintains the trial court (1) failed to address two

procedural motions; (2) erred on January 28, 2005, in concluding that an issue was mature for

decision without an evidentiary hearing; (3) erred in determining that language in a qualified

domestic relations order, incorporating a property settlement agreement, was not ambiguous; and

(4) erred in interpreting that language. We find no error and affirm.

                                            I.

                                          Facts

        Wife and Richard J. Tobin (husband) were divorced by final decree entered December

19, 2003. The parties had separated on April 6, 2002. The decree incorporated a property

settlement agreement (the Agreement), which contained the following paragraph:

            10. The parties' retirement assets, except as otherwise set forth
            herein, shall be divided in *principal* as follows:

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(a) Fifty percent of the marital share of all TIAA and CREF accounts shall be transferred to the Wife by qualified domestic relations order, or other appropriate tax-free transfer instrument. The marital share shall reflect *contributions* made prior to March 1, 2002, as adjusted by passive gains or losses *after the date of separation* until the date of rollover/transfer.

(Emphasis added).

On March 12, 2004, wife's counsel prepared, husband's counsel endorsed as "seen," and the court entered a qualified domestic relations order (QDRO) which incorporated the language from paragraph 10(a) of the Agreement.

A dispute arose as to whether wife's agreed share was 50% of husband's *contributions* to the retirement plan, or 50% of the *contributions, plus the growth of those contributions, that is, 50% of the value* of the retirement plan assets upon the date of separation. The plan administrator, at the urgings of the respective parties, adopted both interpretations at different times.

Accordingly, husband filed a motion for entry of a decree "setting forth the proper division of the assets" referred to in paragraph 10(a). Wife then filed a motion to dismiss husband's motion for failure to comply with Rule 1:4(d) and lack of subject matter jurisdiction. Wife's motion was set for a hearing on January 28, 2005.

At that hearing, counsel for the parties argued their respective positions as to the appropriate interpretation of paragraph 10(a) and offered case law in support of the same.

The following exchanges occurred during the January 28, 2005 hearing:

> THE COURT: So is the claim that the agreement is ambiguous? . . .
>
> [Husband's counsel]: No. Each side is saying that there's no ambiguity, and we're saying that the [50% of contributions] is the correct one. They're saying that [50% of value] is the correct one.
>
> \* \* \* \* \* \* \*

THE COURT:  So, you contend that it's simply a legal argument about what the language means.

[Husband's counsel]:  Correct. . . .

\*       \*       \*       \*       \*       \*       \*

[Wife's counsel]:  [H]e wants you to interpret it so that it means that she only gets the contributions . . . but that flies in the face of the definition of "marital share."  And if he's not going to offer any evidence at trial, Your Honor has everything in front of you that you need to know today.  You understand what it means. . . .

\*       \*       \*       \*       \*       \*       \*

[Wife's Counsel]:  That's all I have, Your Honor.

THE COURT:  All right.  I'll take the matter under advisement. . . .

\*       \*       \*       \*       \*       \*       \*

THE COURT:  I do agree that there's no need for an evidentiary hearing.  This is strictly a question of law.

Wife made no objection to the court's statement that it would take the matter under advisement for decision nor to the court's statement that the decision was a matter of law without the need for an evidentiary hearing.

By a letter opinion dated February 2, 2005, the court noted that even though "the parties agreed that the disputed language is not ambiguous," it independently found that the language was not ambiguous.

The court concluded that husband's interpretation of the language was the correct one and wrote:

> [T]he clear wording of the provision evinces the parties' intent to distinguish between the contributions made to the account, and the passive increase/decrease associated with them, measured from time to time.  Indeed . . . the word "contribute" means "to give jointly with others to a common fund."  This language denotes the parties' recognition that "contributions" form a separate part of the account.  Surely, had the parties intended to divide the entire

balance of the account, or the value of the account, as it existed prior to March 1, 2002, they could have said so.

. . . Paragraph 10(a) provides that her entitlement to contributions ends on March 1, 2002 and the date of separation was April 6, 2002. This arrangement belies [wife's] argument now that the parties meant to rely on the definition of "marital share" found in Va. Code Section 20-107.3 (G) (1) [because that code section defines marital share as] "earned during the marriage and before the last separation of the parties."

(Citation omitted).

A decree entered February 14, 2005 adopted the trial court's letter opinion of February 2, 2005 and directed husband's counsel to prepare an amended QDRO in accordance with the same.

Wife then filed a motion to reconsider, the core of which was that Paragraph 10(a) *was ambiguous*, and, accordingly, an evidentiary hearing was appropriate. Wife obtained new counsel, who filed essentially the same motion. After hearing argument, the trial court entered a decree May 4, 2005, denied both motions to reconsider, and made the February 14, 2005 order final.[1]

II.

Analysis

A.

Wife's initial contention is that the trial court failed to address her motion to dismiss for lack of subject matter jurisdiction and her motion to dismiss for an insufficient pleading. We first note that the trial court did rule on those motions, denying both in its February 14, 2005 decree and in the final decree. Furthermore, we find no error in those decisions.

---

[1] By decree entered March 7, 2005 the trial court had stayed the finality of its decree of February 14, 2005, pending resolution of the motions to reconsider.

Assuming that husband's motion was, in fact, a pleading, it "clearly informs the opposite party of the true nature of the claim or defense" as required by Rule 1:4(d). Husband asked for the court to "set[] forth the proper division of the assets set forth in Paragraph 10(A) [sic] of the parties' Outline of Settlement Terms . . . ." The outline referred to was already in the record of the case, and paragraph 10(a) refers only to the TIAA-CREF accounts. Given the previous proceedings and events of this case, husband's motion was quite sufficient to inform wife of his claim and, accordingly, complied with Rule 1:4(d).

As to wife's second motion, the trial court had subject matter jurisdiction under Code § 20-107.3(K)(4). That section gives jurisdiction for a trial court to "[m]odify any order . . . intended to affect or divide any pension, profit-sharing or deferred compensation plan or retirement benefits . . . to revise or conform its terms so as to effectuate the expressed intent of the order."

Wife contends that the trial court's interpretation of the Agreement altered the contract between the parties, constituting an overreaching of Code § 20-107.3(K)(4). In support, wife cites Hastie v. Hastie, 29 Va. App. 776, 514 S.E.2d 800 (1999), and Fahey v. Fahey, 24 Va. App. 254, 481 S.E.2d 254 (1997), for the proposition that a trial court cannot enter a QDRO changing the terms of an agreement entered into by the parties. We concur in that proposition. Here, however, the trial court's actions are clearly distinguishable from those overturned in Hastie and Fahey.

In Fahey, we held that a QDRO distributing to the wife one-half of the account's assets in kind substantially modified the final decree. 24 Va. App. at 257, 481 S.E.2d at 497. The decree only provided for her to receive one-half of the value of the account at the date of separation, while the assets in kind at the time of the QDRO had substantially increased in value. Thus, the

QDRO gave the wife far more than the final decree and therefore changed the intent of the decree in violation of Code § 20-107.3(K)(4). Id.

Similarly, in Hastie the trial court's final decree awarded wife 40% of the marital portion of the pension, then defined the exact dollar amount that constituted and provided an exact dollar amount for payment until paid in full. 29 Va. App. at 781, 514 S.E.2d at 803. A later QDRO ordered husband to pay 40% of the marital share of each monthly installment indefinitely, and we held that order to critically alter the terms of the contract and be beyond the court's jurisdiction. Id. at 782-83, 514 S.E.2d at 804.

In the case at bar, however, the trial court was asked only to interpret and clarify the meaning of the language in its final order, not to change the language of the agreement that order had incorporated. So long as a trial court's new QDRO faithfully interprets and applies its own previous order, it is fully within the court's jurisdiction under Code § 20-107.3(K)(4). Because we concur with the trial court's interpretation of the Agreement as incorporated into the divorce decree, the trial court did not exceed its jurisdiction.

B.

For decisional purposes, we combine two assignments of error.

In reading the exchanges between the court and the parties at the January 28, 2005 hearing, the only reasonable conclusion is that wife agreed that paragraph 10(a) was not ambiguous, that the court should interpret it, and that, accordingly, an evidentiary hearing was not just unnecessary, but would violate the parol evidence rule.

In Berry v. Kilinger, 225 Va. 201, 206, 300 S.E.2d 792, 795 (1983), the Supreme Court of Virginia was concerned with whether the trial court had correctly interpreted language in a contract. The Court noted that at trial Berry had first argued that the relevant language was not ambiguous. When the trial court pointed out that accordingly extrinsic evidence was barred by

the parol evidence rule, "[c]ounsel stated his agreement with the definition, promptly changed his position, and asserted that [the] paragraph . . . was ambiguous." Id. The Supreme Court concluded that appellants, "having contended . . . in their initial arguments at trial that the language in question was unambiguous, will not be allowed to take a contrary position thereafter." Id. at 207, 300 S.E.2d at 795.

A litigant cannot assume inconsistent and contradictory positions during the course of a single litigation. Rohanna v. Vazzana, 196 Va. 549, 553-54, 84 S.E.2d 440, 442 (1954); Bd. of Supervisors v. Spilman, 113 Va. 391, 394, 74 S.E. 151, 153 (1912). Likewise, a party may not "change his position to the prejudice of his adversaries in contradiction of [a] stipulation freely entered into." McLaughlin v. Gholson, 210 Va. 498, 501, 171 S.E.2d 816, 818 (1970); see also Burch v. Grace St. Bldg. Corp., 168 Va. 329, 340, 191 S.E. 672, 677 (1937) ("a litigant is estopped from taking a position which is inconsistent with one previously assumed").

Here, wife clearly stipulated by agreement that the disputed language was not ambiguous and that its interpretation was a question of law mature for decision without an evidentiary hearing. The trial court's statement in its February 2, 2005 opinion letter that "the parties agreed that the disputed language is not ambiguous" reflects that conclusion. That recital constitutes a finding of fact substantially supported by the evidence.

Wife may not adopt a position inconsistent to that earlier taken and may not change her position in contradiction to a stipulation. For these reasons, we find that the trial court did not err in concluding that the issue was mature for decision without an evidentiary hearing and did not err in concluding that the disputed language was not ambiguous. Accordingly, wife's assignments of error (2) and (3) are without merit.

C.

"[P]roperty settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995); see also Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2005); Boedeker v. Larson, 44 Va. App. 508, 518, 605 S.E.2d 764, 769 (2004); Shenk v. Shenk, 39 Va. App. 161, 170, 571 S.E.2d 896, 901 (2002).

"We are not bound by the trial court's construction of contract terms, but rather, 'we have an equal opportunity to consider the words within the four corners of the disputed provision.'" T.M. Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002) (quoting Wilson v. Holyfield, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984)). Furthermore, "whether contract language is ambiguous is [a question] of law, not fact." Plunkett, 271 Va. at 166-67, 624 S.E.2d at 41. Thus, we review the trial court's decisions on this issue *de novo*.

In that consideration "[t]he guiding light . . . is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." Golding v. Floyd, 261 Va. 190, 192, 539 S.E.2d 735, 737 (2001) (quoting Magann Corp. v. Elec. Works, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962)) (omission in original).

Finally, especially relevant here is another principle of contract construction. In Winn v. Aleda Constr. Co., 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984) (citation omitted), the Supreme Court of Virginia held that: "[n]o word or clause will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words aimlessly." See also Ross v. Caw, 231 Va. 206, 214, 343 S.E.2d 312, 316-17 (1986) (noting different uses of the word "may" in a contract were necessary to give full effect to all parts of a

contract).  "Parties are not presumed to have included a provision of no effect."  Hughes & Co. v. Robinson Corp., 211 Va. 4, 7, 175 S.E.2d 413, 415 (1970).

Initially, as the trial court noted in its letter opinion of February 2, 2005, if the parties had intended to evenly divide the "value" of the account as of March 1, 2002, all they had to do was say so.  Similarly, if they wanted to divide the "marital share" as Code § 20-107.3(G)(1) defines the term, they could have tracked the statutory language or referred to the Code's definition.

Instead, the parties chose to define a "marital share" and then said "[t]he marital share shall reflect contributions made prior to March 1, 2002, as adjusted by passive gains or losses after the date of separation until the date of rollover/transfer."  In so doing, the contract demonstrates a specific intent of the parties to depart from the statutory definition.  The statutory marital share includes more than just contributions and relates to the date of separation, April 6, 2002 in this case, not the date agreed to by the parties.  Moreover, to interpret the Agreement as wife argues, the court would render the word "contributions" meaningless and as having no effect as precluded by Winn and Hughes & Co.

We also note that wife does not want to strike the phrase "as adjusted by passive gains or losses after the date of separation until the date of rollover/transfer" even though such gains or losses are not part of the statutory "marital share."  She takes this position because it increases her share of the pension.  Furthermore, this language would be unnecessary if the parties had intended the marital share to include passive gains or losses *before* the date of separation, that is, as of March 1, 2002.

We find the Agreement unambiguous.  The contested language includes a definition of the "marital share" to which the wife is entitled -- the contributions made by husband before March 1, 2002 and the passive gains or losses from that date until the rollover/transfer.  Accordingly, the trial court correctly interpreted the language at issue here.

III.

Conclusion

For these reasons we hold the trial court properly denied wife's procedural motions and correctly interpreted the language contained in paragraph 10(a) of the Agreement.

<u>Affirmed.</u>