COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Clements
Argued at Salem, Virginia


DENNIS LEE STRAUSBAUGH

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1040-06-3          JUDGE JEAN HARRISON CLEMENTS
                                                         MAY 15, 2007

BRENDA BRITT STRAUSBAUGH,
 N/K/A BRENDA BRITT MONROE


             FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                           Ray W. Grubbs, Judge

         Edwin C. Stone (Stone & Kellerman, P.C., on brief), for appellant.

         John S. Huntington for appellee.


         Dennis Lee Strausbaugh (husband) appeals from the trial court's April 5, 2006 decree

awarding his former wife, Brenda Britt Strausbaugh, n/k/a Brenda Britt Monroe (wife), half of the

marital share of his pension, pursuant to the terms of the parties' final decree of divorce.  Husband

contends that, in making that award, the trial judge erroneously (1) modified substantive terms of

the divorce decree in violation of Rule 1:1, (2) used the statutory marital share formula rather than

the actual value of the pension as of the date of the parties' separation to calculate wife's share of

the pension, and (3) found the lump sum severance payment he received from his employer

constituted a pension benefit in which wife had an interest.  Wife requests an award of attorney's

fees and costs incurred in defending this appeal.  For the reasons that follow, we affirm the

judgment of the trial court and grant wife's request for appellate attorney's fees and costs.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

The facts relevant to our disposition of this appeal are not in dispute.[1] The parties were married on August 23, 1969. They separated 184 months later on December 30, 1984, and were divorced by final decree of the Circuit Court of Montgomery County entered August 21, 1986.

The final decree of divorce provided that,

> at such time as [husband] shall be entitled to receive a monthly pension, or other pension of any nature from AT&T Technologies, Inc., [wife] shall be entitled to receive fifty percent (50%) of the net amount of such pension payments, the net amount being defined as the actual amount received by AT&T Technologies, Inc. or the administrator of its pension plan.

Neither party appealed the final decree of divorce.

Husband worked for Western Electric Company from 1968 to 1980, AT&T Electronic Components from 1980 to 1982, AT&T Technologies from 1982 to 1986, AT&T De Mexicana International Electronics from 1986 to 1989, AT&T Power Systems from 1989 to 1994, AT&T Semi-conductor Technologies from 1994 to 1995, CIRENT Semi-conductor Company from 1995 to 1996, Lucent Technologies from 1996 to 2000, and Agere Systems from 2000 to 2002. Prior to the parties' separation, husband's annual earnings increased from $7,800 in 1970 to $37,800 in 1984.

---

[1] In response to an order of this Court to show cause why this appeal should not be dismissed for lack of a transcript or written statement of facts, husband's counsel represented that the April 5, 2006 decree was "the equivalent of a separate statement of facts" because "counsel for both parties cooperated fully to incorporate into the . . . decree[] all facts relevant to the issues resolved by the trial court and now before this [C]ourt on appeal." We permitted the appeal to proceed on that basis. Accordingly, the facts set forth in this opinion are based on the April 5, 2006 decree and the judge's letter opinion incorporated therein, as well as the relevant pleadings and exhibits in the record.

He earned an average annual income of $19,102 over that period. Following the parties' separation, husband's annual earnings increased from $39,600 in 1985 to a high of $119,065 in 1995. From 1994 to 2002, husband earned an average annual income of $97,033. Husband retired on October 6, 2002. His pension benefits commenced on October 7, 2002.

Husband's last employer, Agere Systems, calculated that, for purposes of determining husband's pension benefit, husband had 34 years and 1 month (409 months) of "Benefit Service," from September 1968 through October 6, 2002. Agere Systems defined "Benefit Service" as "the number of years and months with Agere beginning with the Date of Hire and ending with the Date of Termination." Using a formula incorporating husband's 409 months of credited service time and his compensation from 1994 to 2002, Agere Systems calculated that husband's "regular service pension benefit" was $3,247.75 per month. Noting there were "two parts to [husband's pension] benefit," Agere Systems also paid husband a "Supplemental Pension Benefit," which husband chose to receive as a lump sum payment of $50,604 rather than as a monthly annuity of $294.76. The "Supplemental Pension Benefit" was "paid from the *general assets* of the Qualified Trust of the Agere Systems, Inc. Pension Plan and . . . was computed on the basis of [husband's] salary and his years of service with Agere Systems."

On March 3, 2003, wife moved for "entry of appropriate orders to facilitate the distribution of [husband's] pension" in accordance with the terms of the final decree of divorce. She argued that, "based upon the language of the 1986 divorce decree," she was entitled to half of the pension benefits received by husband.[2] Husband argued wife was not entitled to receive

---

[2] Wife acknowledged below that, although the divorce decree explicitly entitled her to fifty percent of husband's pension payments, an award of fifty percent of the marital share of husband's pension in accordance with the marital share formula in Code § 20-107.3(G)(1) would not be unfair. Under that approach, wife argued, her share of husband's monthly pension benefit would be $730.55 ($3,247.75 x 44.9878% x 50%) and her share of husband's lump sum pension benefit would be $11,382.87 ($50,604.23 x 44.9878% x 50%).

any distribution from his pension because his pension was from Agere Systems, not "AT&T Technologies, Inc.," as specified in the divorce decree. Husband also argued that, if the trial court determined wife was entitled to distribution of his pension, it should be valued as of the date of the parties' separation, rather than the date of his retirement.[3] He further argued that wife was not entitled to any part of the lump sum payment he received from Agere Systems because it was not a pension benefit. Husband testified at the *ore tenus* hearing on wife's motion that "the company officials explained to him that the lump sum payment was in the nature of a severance benefit."

Rejecting husband's testimony, the trial judge found that the lump sum payment husband received from Agere Systems constituted a pension benefit rather than a severance benefit. The judge also determined that, pursuant to the divorce decree, wife was entitled to half the marital portion of the pension benefits husband received from Agere Systems and that the marital portion of those benefits was to be calculated using the "statutorily defined marital share portion" set forth in Code § 20-107.3(G)(1). Accordingly, the judge calculated that the marital portion of husband's pension was 44.9878% (184 months/409 months); that wife's share of the marital portion of the lump sum "Supplemental Pension Benefit" was $11,382.87 ($50,604.23 x 44.9878% x 50%); and that wife's share of the marital portion of the monthly pension benefit was $730.55 per month ($3,247.75 x 44.9878% x 50%). The judge memorialized these rulings

---

[3] According to the April 5, 2006 decree:

> The [c]ourt considered evidence and argument establishing that if the plan administrator were called upon to determine the value of a monthly service pension benefit based upon a single life annuity at age 65 with an assumed termination date being the date of separation, the plan administrator would have calculated the value of a single life annuity to have been $721.47.

Using that figure, husband argued below that wife was entitled to no more than $360.74 from his monthly pension payments ($721.47 x 50%).

in the April 5, 2006 decree and entered a qualified domestic relations order consistent therewith on April 19, 2006.

This appeal followed.

## II.  RULE 1:1 AND CODE § 20-107.3(K)(4)

On appeal, husband contends the trial court substantively modified the terms of the August 21, 1986 final decree of divorce more than twenty-one days after entry of the decree, in violation of Rule 1:1, when it awarded wife a share of his pension from Agere Systems. Husband argues that, under the express terms of the final decree, wife was entitled to a share of his pension only from "AT&T Technologies, Inc."  He further argues that, because his pension was from Agere Systems, rather than AT&T Technologies, Inc., wife was not entitled to any part of the pension, and the trial court erred in holding to the contrary.  We disagree.

While "we review the trial court's application of the law to [the facts of a case] *de novo*," the trial court's "factual findings will not be disturbed on appeal unless they are plainly wrong or without evidence to support them."  Collins v. First Union Nat'l Bank, 272 Va. 744, 749, 636 S.E.2d 442, 446 (2006).

Ordinarily, a trial court loses jurisdiction over a case twenty-one days after entry of the final decree.  See Rook v. Rook, 233 Va. 92, 94-95, 353 S.E.2d 756, 758 (1987) (citing Rule 1:1).  Thus, the equitable distribution provisions of an unappealed final divorce decree become "the law of [the] case" after twenty-one days and are not normally "subject to later modifications."  Hastie v. Hastie, 29 Va. App. 776, 782, 514 S.E.2d 800, 804 (1999).  However, Code § 20-107.3(K)(4) "creates a limited exception to the strict directive of Rule 1:1" and gives the trial court continuing authority to modify the terms of the final decree's "retirement or pension provisions [to] 'effectuate the expressed intent' of the original decree," provided the modification is "consistent with the substantive provisions of the original decree" and not

"simply to adjust its terms in light of the parties' changed circumstances." Caudle v. Caudle, 18 Va. App. 795, 797-98, 447 S.E.2d 247, 249 (1994).

Here, the expressed intent of the pension provisions of the divorce decree was to award wife half of husband's "pension . . . received [from] AT&T Technologies, Inc. or the administrator of its pension plan." When asked pursuant to wife's March 3, 2003 motion to implement the distribution of husband's pension in accordance with the pension provisions of the divorce decree, the trial judge found that all nine of husband's employers from September 1968 through his retirement on October 6, 2002, a period of thirty-four years and one month, were "successors in interest and existed as a result of mergers, acquisitions, spin-offs or other changes in corporate entity or divisions thereof." Accordingly, the judge further found that "the nexis [sic] between [husband's] employers [was] sufficient to establish a service period of thirty-four . . . years and one . . . . month." On that basis, the judge concluded that, pursuant to the pension provisions of the divorce decree, wife was entitled to half the marital portion of the pension benefits husband received from Agere Systems, the administrator of husband's pension when he retired. In other words, in resolving the issue before him, the trial judge implicitly found that, although the pension husband received when he retired was administered and paid by Agere Systems, that pension was, in fact, the same pension specifically referenced in the divorce decree.

On the record before us, we cannot say this finding is plainly wrong or without credible evidence to support it. Indeed, in calculating husband's pension benefit, Agere Systems expressly credited husband with thirty-four years and one month of "Benefit Service," which Agere Systems defined as "the number of years and months with Agere beginning with the Date of Hire and ending with the Date of Termination." This credited service time "with Agere" comprised the 409-month period from September 1968 through husband's retirement in October

2002 and, thus, necessarily included the 184-month period of the parties' marriage before they separated and the four-year period husband worked specifically for AT&T Technologies, Inc.[4] In addition, the credited service time accrued during husband's employment with AT&T Technologies, Inc., and its successors in interest, resulting from "mergers, acquisitions, spin-offs or other changes in corporate entity or divisions." Accordingly, although AT&T Technologies, Inc., was no longer husband's employer, the pension husband received from Agere Systems was the same pension from "AT&T Technologies, Inc. or the administrator of its pension plan" specified in the divorce decree.

We hold, therefore, that, in awarding wife a share of the pension benefits husband received from Agere Systems, the trial judge did not modify the substantive provisions of the final decree of divorce, but only "conform[ed] its terms so as to effectuate the expressed intent of [that decree]." Code § 20-107.3(K)(4). Accordingly, the trial judge did not violate Rule 1:1 in making that award.

### III. CALCULATION OF WIFE'S SHARE OF PENSION

Husband next contends that, even if the trial court had the authority to award wife a share of his pension benefits, it erred in applying the statutory marital share formula to calculate wife's share of the pension rather than using the plan administrator's determination of the value of the pension as of the date of the parties' separation.[5] We disagree.

---

[4] Although not entirely clear from the record, husband was presumably working for AT&T Technologies, Inc., when the final decree was entered on August 21, 1986.

[5] For purposes of this analysis, we will assume, without deciding, that evidence establishing the value of husband's pension as of the date of the parties' separation was properly before the trial court. See footnote 3.

Code § 20-107.3(G)(1) governs the distribution of the marital share of a pension.  See

Mosley v. Mosley, 19 Va. App. 192, 198, 450 S.E.2d 161, 165 (1994).  In pertinent part, this

code section provides:

> The court may direct payment of a percentage of the
> marital share of any pension . . . or retirement benefits, whether
> vested or nonvested, which constitutes marital property and
> whether payable in a lump sum or over a period of time. . . .
> However, the court shall only direct that payment be made as such
> benefits are payable. . . .  "Marital share" means that portion *of the*
> *total interest*, the right to which was earned during the marriage
> and before the last separation of the parties . . . .

Code § 20-107.3(G)(1) (emphasis added).  Addressing Code § 20-107.3(G)(1)'s provisions, we

held in Mosley:

> This statutory language is mandatory and can be implemented
> through the use of a simple formula.  The number of years that the
> spouse was in the pension plan while in the marriage serves as the
> numerator and the total number of years in the pension plan serves
> as the denominator.  This fraction establishes the marital share of
> the pension as defined by the statute.

19 Va. App. at 198, 450 S.E.2d at 165.

Here, pursuant to the terms of the final decree of divorce, distribution of the marital share

of husband's pension was deferred until "such time as [husband was] entitled to receive a

monthly pension, or other pension of any nature."  When, following husband's retirement, wife

moved for "entry of appropriate orders to facilitate the distribution of [husband's] pension," the

trial judge implicitly recognized that husband's pension was part marital and part separate

property and accordingly used the statutory marital share formula to calculate the marital portion

of the monthly and lump sum pension payments husband received from Agere Systems

($3,247.75 x 44.9878% = $1,461.09 and $50,604.23 x 44.9878% = $22,765.73).  Consistent with

the terms of the divorce decree, the judge then awarded wife half of each of those amounts

($1,461.09 x 50% = $730.55 and $22,765.73 x 50% = $11,382.87).

Husband does not challenge the correctness of the trial judge's calculations.  Instead, he argues the trial judge's use of the statutory formula to calculate wife's share of his pension benefits was inappropriate in this case because the formula, in using the value of his pension benefits at the time of his retirement as a factor, relied on salary increases he earned after the date of separation and thereby gave wife a greater pension interest than was legally warranted.  This argument, however, runs counter to our established case law:

> Under Virginia law, it is well established that the marital portion of a defined [pension] benefit plan is distinguished from the separate portion by the application of a fraction, the numerator of which represents the total time the pensioner is employed during the parties' marriage, and the denominator of which represents the total time the pensioner is employed through the date of retirement.  The fraction diminishes the marital share in relation to the number of years that pre- and post-marital contributions are made.  Thus, as applied, the fraction effectively excludes from the marital share the income earned by pre- and post-marital contributions to the pension.

Mann v. Mann, 22 Va. App. 459, 464-65, 470 S.E.2d 605, 607-08 (1996) (citations and footnote omitted).  Additionally, we have "rejected limitation of a pension award, payable in the future, to a 'present value calculation' because it denied the benefit of 'future earnings and adjustments that are attributable to the . . . deferred share' and its 'future appreciation.'"  Banagan v. Banagan, 17 Va. App. 321, 324, 437 S.E.2d 229, 231 (1993) (quoting Zipf v. Zipf, 8 Va. App. 387, 397, 382 S.E.2d 263, 268-69 (1989)).

> "It is only fair that both parties share in the increased value of the pension," or one will be "receiving the increase in value" over time which is attributable to the other's marital interest.  Primm v. Primm, 12 Va. App. 1036, 1038, 407 S.E.2d 45, 47 (1991).  Contrary to the husband's view, such enhancement is clearly a part of the "total [pension] interest" component of the[] marital share equation and obviously distinguishable from a judicial award of interest on a deferred share of a pension.  See Code § 20-107.3(G).

Banagan, 17 Va. App. at 325-26, 437 S.E.2d at 231.  "There can be no justification for [husband] receiving the increase in value of his . . . share as well as any increase in [wife's] . . . share." Primm, 12 Va. App. at 1038, 407 S.E.2d at 47.  Thus,

> [w]hile the trial court "must be given flexibility to determine which method of distribution to utilize in a given case," Gamble [v. Gamble], 14 Va. App. [558,] 585, 421 S.E.2d [635,] 651 [(1992)] (citing L. Golden, Equitable Distribution of Property § 6.16 (1983 & Supp. 1991)), "*[a] present value calculation is of direct use only where payment of the portion of the monetary award attributable to the pension is to occur immediately rather than over a period of time*."  Zipf, 8 Va. App. at 397, 382 S.E.2d at 268 (citations omitted) (emphasis added).

McGinniss v. McGinniss, 49 Va. App. 180, 187-88, 638 S.E.2d 697, 700 (2006).

Here, the trial judge's use of the statutory marital share formula to calculate wife's share of the pension is consistent with these principles.  Accordingly, we hold the judge did not err in using that formula.

## IV.  LUMP SUM PAYMENT

Husband contends the trial court erred in finding the lump sum payment he received from Agere Systems constituted a pension benefit rather than a severance benefit.  This contention ignores our standard of review.

As previously mentioned, we are bound by the trial court's findings of fact "unless they are plainly wrong or without evidence to support them."  Collins, 272 Va. at 749, 636 S.E.2d at 446.  Additionally, "[a]s an appellate court, we view the evidence, and all reasonable inferences flowing from the evidence, in a light most favorable to . . . the party prevailing below."  Miller v. Cox, 44 Va. App. 674, 678, 607 S.E.2d 126, 128 (2005).

Here, credible evidence in the record supports the trial judge's finding that the lump sum payment "was a pension benefit in which [wife] ha[d] a marital interest."  For one thing, Agere Systems, the administrator of husband's pension, specifically noted there were "two parts to

[husband's pension] benefit" and identified the second part of husband's pension benefit, the lump payment, as a "Supplemental Pension Benefit Payment." Likewise, the lump sum payment was "paid from the *general assets* of the Qualified Trust of the Agere Systems, Inc. Pension Plan." The trial judge could properly conclude from this evidence that the lump sum payment was a part of appellant's pension benefits.

Nevertheless, husband argues that such a conclusion is inappropriate because he "testified in the *ore tenus* hearing that he was advised that the payment was a severance payment resulting from the company downsizing." Husband, however, provided no documentary evidence at the *ore tenus* hearing to support his testimony or counter the administrator's description of the lump sum payment as a pension benefit. Moreover, husband's argument disregards the familiar principle of appellate review that "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003); see also Anderson v. Anderson, 29 Va. App. 673, 686, 514 S.E.2d 369, 376 (1999) ("The trier of fact . . . has the discretion to accept or reject any of the witness'[s] testimony."). Having had the opportunity to see and hear the evidence presented at the *ore tenus* hearing, the trial judge had broad discretion to evaluate the credibility of the conflicting evidence presented in this case, and we cannot say, on the record before us, that the judge abused his discretion in rejecting husband's testimony. Thus, we will not disturb the court's credibility determination on appeal.

Because the trial judge's finding that the lump sum payment constituted a pension benefit instead of a severance benefit is not plainly wrong or without credible evidence to support it, we hold the trial judge did not err in making that finding.

## V. ATTORNEY'S FEES

Wife seeks an award of attorney's fees and costs incurred in defending this appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Because this appeal lacks merit, we grant wife's request for reasonable appellate attorney's fees and costs. See Miller, 44 Va. App. at 688, 607 S.E.2d at 133. Accordingly, we remand this case to the trial court for determination and award of the appropriate appellate attorney's fees and costs. Id.

## VI. CONCLUSION

For these reasons, we affirm the judgment of the trial court, grant wife's request for attorney's fees and costs, and remand for determination of those fees and costs.

Affirmed and remanded.