**Salem**

OLIVIA BAILEY CLINE CAUDLE

v.

ROBERT MALCOLM CAUDLE

No. 1135-93-3

Decided August 16, 1994

796

COUNSEL

Arthur E. Smith, for appellant.

Charles B. Phillips (Phillips, Doherty & Swanson, on brief), for appellee.

OPINION

**COLEMAN, J.**—In this domestic relations appeal, Olivia Caudle challenges the trial court's modification of the final divorce decree which changed the time that she would begin receiving her share of her former husband's retirement benefits. Although the trial court has authority under Code § 20-107.3(K)(4) to "[m]odify" the final divorce decree "intended to . . . divide [a] . . . pension . . . or retirement [plan,]" the court may do so only for the limited purpose of "revis[ing] or conform[ing] its terms so as to effectuate the expressed intent of the order."

Here, however, the trial judge erred by exceeding the authority granted by Code § 20-107.3(K)(4) because the judge changed the substantive terms of the final decree. The judge changed the final decree by delaying for several years the time when Olivia Caudle would be paid her part of the marital share of the retirement benefits after her former husband began receiving his share of the benefits. Code § 20-107.3(K)(4) does not empower trial courts to make substantive modifications of this nature in the final divorce decree "dividing" the pension. Therefore, because no statute authorizes the trial court to modify the final decree, Rule 1:1 prohibits the court from modifying the final decree in this manner. Accordingly, we reverse and vacate the modification decree and remand the case to the trial court for entry of a proper Qualified Domestic Relations Order (QDRO) in accordance with the provisions of Code § 20-107.3(K).

In 1988, the trial court entered a final divorce decree, which stated:

[T]he defendant is . . . a participant in the Virginia Supplemental Retirement System, . . . the Court finds from the evidence that the defendant's total length of service for the Commonwealth at the earliest date of his retirement (age 60 years) will be 39 years and 8 months. . . . Accordingly, it is

ORDERED that if and when the defendant commences to receive a retirement benefit under the Virginia Supplemental Retirement System 30.777% of that monthly benefit shall be the entitlement of the complainant, Olivia Bailey Cline Caudle.

In 1992, Robert Malcolm Caudle, the defendant, developed a benign brain tumor. Because he had twenty-five years of government employment, during which time he paid into the Virginia Supplemental Retirement System (VSRS), Caudle was eligible to retire at age fifty-one. *See* Code § 51.1-206(A)(2). He retired and began receiving his retirement benefits at that age. At that time, Caudle filed a motion pursuant to Code § 20-107.3(K)(4) requesting that the trial court "clarify" the pension provisions of the final divorce decree. The trial court reinstated the cause on its docket and entered a QDRO (Qualified Domestic Relations Order), drafted by Robert Caudle's attorney, which provided that Olivia Caudle would not begin receiving her 30.777% of Robert Caudle's retirement benefits until 1996, when he reached age fifty-five. This modification was a substantive change in the provision of the original final divorce decree, which provided that Olivia Caudle would receive a share of her former husband's pension "when [he] commences to receive a retirement benefit." The court based its modification of the decree in this respect upon the fact that "it was not within the contemplation of the parties at the time of the trial . . . that the defendant anticipated . . . early retirement." Based upon that finding, the trial judge refused to enter Olivia Caudle's proposed QDRO (Qualified Domestic Relations Order), which provided that she be paid immediately her portion of the marital share of her former husband's monthly retirement benefits.

Code § 20-107.3(K)(4) authorizes trial courts to "[m]odify any order entered in a case filed on or after July 1, 1982, intended to affect or divide any pension, profit-sharing or deferred compensation plan or retirement benefits . . . *only* . . . to revise or conform its terms so as to effectuate the expressed intent of the order." (emphasis added). This statute creates a limited exception to the strict directive of Rule 1:1, which states, "[a]ll final judgments, orders, and decrees . . . shall remain under the control of the trial court and subject to be modified . . . for twenty-one days after the date of entry, and no longer." Thus,

based on Code § 20-107.3(K)(4), a trial court has authority to reinstate an equitable distribution decree on its docket in order to make the terms of the retirement or pension provisions "effectuate the expressed intent" of the original decree. Code § 20-107.3(K)(4) does not, however, allow a court to modify a final divorce decree simply to adjust its terms in light of the parties' changed circumstances.

Although the trial court had authority to modify the final decree to "effectuate" its expressed intent regarding pension and retirement benefits, any modification had to be consistent with the substantive provisions of the original decree. Here, the final divorce decree provided that Olivia Caudle was entitled to 30.777%[1] of her former husband's retirement "when [he] commences to receive a retirement benefit." Moreover, the provision in the decree that she would be paid her share of the pension when he began receiving his retirement benefits was in accord with Code § 20-107.3(G)(1) that "payment be made as such benefits are payable." Under the terms of the final decree and Code § 20-107.3(G)(1), the non-retiring spouse is entitled to receive his or her part of the marital share as retirement payments are received.

We held in *Newsome v. Newsome*, 17 Va. App. 22, 26, 441 S.E.2d 346, 348 (1994), that "the entry of an order purporting to change the substance of the original order . . . would contravene the intent of the legislature in enacting [Code § 20-107.3(K)(4)]." Here, the trial court's QDRO (Qualified Domestic Relations Order) changed the substance of the original decree by allowing retirement benefits to be paid to the retiring spouse, without the non-retiring spouse, who is entitled to her portion of the marital share, receiving any part and by delaying her entitlement after substantial retirement benefits have been paid to the retiring spouse. This change deprived the appellant of a substantial property right.

---

[1] Olivia Caudle does not contend that the marital share of her husband's retirement benefits should be recomputed because her share of 30.777% was based on the assumed variable that Robert Caudle would retire at age sixty. The validity of the percentage of pension benefits to which Olivia Caudle is entitled has not been challenged on appeal; therefore, we address only whether the time for payment to the non-retiring spouse may be changed.

The fact that the parties may have originally contemplated that Robert Caudle's retirement would occur at age sixty or that the court assumed this variable in computing the marital share of the retirement and the percentage to which the non-retiring spouse would be entitled is immaterial. The trial court ascertained and fixed the percentage of the retirement benefit payments that would be payable to the wife "when defendant commences to receive a retirement benefit." Olivia Caudle is entitled to receive her share of the retirement benefits as they are paid to the retiree. The final divorce decree and Code § 20-107.3(G)(1) provide that Olivia Caudle is entitled to be paid her share of the pension or retirement benefits when paid, and Code § 20-107.3(K)(4) does not empower the trial court to modify that provision of the decree.

Finally, when the trial court reinstated the cause on the docket, Olivia Caudle filed a motion requesting the court to enter a QDRO (Qualified Domestic Relations Order) directing the administrator of the VSRS to pay directly to her the amount of monthly pension benefits to which she is entitled under the final decree. The trial court erred in failing or refusing to enter a QDRO (Qualified Domestic Relations Order) pursuant to Code § 20-107.3(K)(4) for this purpose. Accordingly, upon remand, the trial court shall direct that Olivia Caudle is entitled to 30.777% of her husband's monthly retirement benefits in accordance with the terms of the previous decree and shall enter a QDRO (Qualified Domestic Relations Order) to that effect.

For the foregoing reasons, we reverse and remand for the trial court to enter an order "to effectuate the expressed intent of the [former] order" that Olivia Caudle be paid the percentage of retirement benefits to which she is entitled as the defendant "commences to receive [his] retirement benefits."

*Reversed and remanded.*

Koontz, J., and Elder, J., concurred.