COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Annunziata and Bumgardner


CHARLES WAYNE WILLIAMS
                                              OPINION BY
v.   Record No. 1297-99-3        JUDGE RUDOLPH BUMGARDNER, III
                                           MARCH 28, 2000
SONJIA LORD WILLIAMS


            FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                  Diane McQ. Strickland, Judge

          (Barry M. Tatel; Neil E. McNally; Key,
          Tatel & McNally, on brief), for appellant.
          Appellant submitting on brief.

          (Charles B. Phillips; Phillips & Swanson, on
          brief), for appellee.  Appellee submitting on
          brief.


     Charles Wayne Williams and Sonjia Lord Williams were

divorced by entry of an amended final decree entered July 10,

1997, which awarded the wife 50% of the husband's pension

benefits.  To carry out that decree, the trial court entered a

qualified domestic relations order (QDRO) January 26, 1998.

After the QDRO went into effect, the wife no longer received 50%

of the benefits.  She petitioned for clarification that she was

entitled to half of the husband's retirement benefits and sought

to have the husband found in contempt for failing to pay that

amount to her.

     The trial court decreed that the wife was entitled to half

of all benefits and ordered the husband to pay all arrearages.

The trial court did not hold the husband in contempt but amended the original amended final decree of July 10, 1997, nunc pro tunc, to order him to pay the balance not paid directly by the pension administrator.  The husband argues on appeal that the trial court lacked jurisdiction to modify substantively the amended final decree.  The husband also argues that the trial court erroneously applied Code § 8.01-428(B) and erred in considering certain exhibits.  For the following reasons, we affirm.

The trial court first entered a final decree of divorce on April 22, 1997.  That decree adjudicated spousal support, the husband's pension, and the proceeds from settlement of the husband's personal injury claim against his employer.  Both parties objected to portions of that final decree, and the husband appealed.  Pending the appeal, the parties negotiated a settlement and submitted it to the trial court.  When the trial court incorporated the agreement into an amended final decree, the husband withdrew his appeal.

Under the amended final decree, the wife waived spousal support and any interest in the husband's personal injury settlement.  She received 50% of all future pension payments paid to the husband beginning July 1, 1997.  The trial court ordered the husband to pay half of his pension benefits directly to the wife during the interim between the entry of the amended order and the processing of a QDRO.  The trial court ordered the

wife to prepare a QDRO directing the plan administrator to pay to her "fifty percent (50%) of each pension payment paid to Charles Wayne Williams when and if same are paid."  The wife prepared the QDRO, and the trial court entered it in January 1998.

The husband's total monthly pension benefit was $1,299 of which the wife's share was $649.50.  The husband paid the full $649.50 directly to the wife from July 1997 until she began receiving payments from the pension administrator in February 1998.  The husband stopped paying any amount once the pension administrator began paying the wife.

As drafted, entered, and approved by the pension administrator, the QDRO only affected one portion of the total benefits due the husband.  The company plan consisted of two tiers of benefits.  Because the QDRO only ordered payment of 50% of Tier II benefits, the wife received $119 per month from the pension administrator.  If the QDRO had ordered payment of 50% of both Tier I and Tier II benefits, she would have received $649.50 as anticipated.

The trial court noted that the entire amended decree referred to the wife receiving 50% of all pension benefits received by the husband whether paid directly by the husband or by the employer pursuant to a QDRO.  Though the QDRO affected only Tier II interests, the trial court ordered that the QDRO remain in effect as entered, but it ordered the husband to pay

50% of his Tier I benefits directly to the wife.  The court ordered the husband to pay all arrearages to the wife, which were 50% of the Tier I benefits that accumulated from February 1998 through May 5, 1999.  The trial court's action did not substantively change its amended final decree entered July 10, 1997.

Under Rule 1:1, courts ordinarily lose jurisdiction twenty-one days after entry of a decree, but when qualifying or maintaining a qualified domestic relations order, courts may "[m]odify any order . . . intended to . . . divide any pension [plan] . . . to revise or conform its terms so as to effectuate the expressed intent of the order."  Code § 20-107.3(K)(4).  Such modification, however, must be "consistent with the substantive provisions of the original decree" and not "simply to adjust its terms in light of the parties' changed circumstances."  Caudle v. Caudle, 18 Va. App. 795, 798, 447 S.E.2d 247, 249 (1994).

In this case, the terms of the amended final decree are clear and unambiguous.  The wife was to receive 50% of the husband's total pension benefits.  The husband paid $649.50, an amount equal to 50% of both Tier I and II benefits, from July 1997 through January 1998 pursuant to the amended final decree.  When the QDRO did not effectively carry out the mandate of that decree, the trial court was empowered to modify its decree to

"conform its terms so as to effectuate the expressed intent of the [original] order."  Code § 20-107.3(K)(4).

The trial court's May 5, 1999 nunc pro tunc order revised the amended final decree to conform with the substantive decision expressed in the decree that the wife receive half of the husband's entire pension benefits.  It did so by ordering the husband to pay 50% of his Tier I pension benefits directly to the wife, the amount not covered by the QDRO.  This modification was not a substantive modification.  The trial court never modified the percentage or amount due the wife.  The modification accomplished what the amended final order directed, but which the QDRO did not fully accomplish.  The modification changed no substantive rights but merely adjusted procedural steps to effect the expressed intent of the order.  The trial court could have made the procedural adjustments by amending the QDRO, but Code § 20-107.3(K)(4) also permitted it to make them by modifying the amended final decree.

This case is distinguishable from decisions that hold that the trial court erred by substantively modifying final orders. In Hastie v. Hastie, 29 Va. App. 776, 514 S.E.2d 800 (1999), the original decree awarded the wife 40% of the present value of the pension, "to-wit, . . . $102,496.40, payable in the amount of $575.04 each month until paid in full."  Id. at 781, 514 S.E.2d at 803 (emphasis added).  The modified order directed the husband to pay the monthly installments for as long as he

received benefits or the wife's death.  The Court held this substantively modified "both the terms of payment and the amount of total payments" the husband was obligated to make to the wife set forth in the original decree.  Id.

In Fahey v. Fahey, 24 Va. App. 254, 481 S.E.2d 496 (1997) (en banc), a QDRO awarded the wife "one-half of the accrued value of the [Keogh] Plan as of July 28, 1994."  The wife sought to amend the QDRO to include appreciation or depreciation when the interest in the plan changed.  The trial court lacked jurisdiction to modify substantively the original order to account for changed circumstances because "the manifest intent of the original order was to allot [the wife] one-half of the value of the . . . account on July 28, 1994."  Id. at 257, 481 S.E.2d at 497.

In Caudle, a final decree of divorce entitled the wife to a share of the husband's pension benefits once he started receiving them.  The trial court modified the final decree by delaying the wife's share of such benefits by several years.  This Court reversed the trial court's modification because it lacked authority to modify substantively the terms of the final decree.  See 18 Va. App. at 796, 447 S.E.2d at 248.

Because we conclude that the trial court could modify its amended final decree pursuant to Code § 20-107.3(K)(4), we need not address the argument that it lacked authority under Code

§ 8.01-428(B) or that it erred in considering evidence of the agreement incorporated into the amended final decree.

For the reasons stated, we affirm.

<u>Affirmed</u>.
