COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Humphreys and Senior Judge Overton


AYSEL JAFARACE

                                                    MEMORANDUM OPINION[*]
v.        Record No. 1086-04-1                              PER CURIAM
                                                        AUGUST 17, 2004
ARDOGAL JAFARACE


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                            Frederick B. Lowe, Judge

          (Aysel Jafarace, *pro se,* on brief).

          (Jerrold G. Weinberg; Michael L. Donner, Sr.; Weinberg & Stein,
          P.C., on brief), for appellee.


        Aysel Jafarace appeals the trial judge's entry of a Qualified Domestic Relations Order

(QDRO).  Upon reviewing the record and briefs of the parties, we conclude that this appeal is

without merit.  Accordingly, we summarily affirm the decision.  See Rule 5A:27.

                                    BACKGROUND

        The parties were divorced by final decree entered on January 8, 2001.  The trial judge

"affirmed and ratified" the parties' "written Separation and Property Settlement Agreement, dated

December 9, 1989," and "incorporated [it] into th[e January 8, 2001] Decree."  In the decree, the

trial judge ordered both parties "to fully comply with the terms of the Agreement" and reserved

jurisdiction in the decree to enter orders to enforce the terms of the Agreement concerning pension

and retirement assets.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The agreement provides that the parties shall divide the husband's BP Employee Savings Plan and BP Retirement Accumulation Plan. Paragraph ten of the agreement, entitled "Retirement," is as follows:

> *Wife shall receive at the time of Husband's retirement one-half the value of Husband's retirement plan as of July 31, 1989.* Such benefits shall be payable to Wife monthly as received by Husband at the rate of 25 percent of the net cash benefit actually received by Husband until Wife receives her total share. Wife shall be responsible for any taxes due on her portion of the retirement. At Husband's option, Husband may pay Wife her portion of the retirement in one lump-sum payment even if he chooses to receive the retirement on a monthly basis. In the event Husband takes a lump-sum payment, Wife shall receive the total amount at the time Husband receives the lump-sum payment. *The parties acknowledge that Wife's share of the retirement as of July 31, 1989, is approximately $19,000.*

(Emphases added.)

At a hearing to consider wife's motion for entry of QDRO's regarding the distribution of husband's retirement accounts, wife's attorney argued that wife "should be getting the $19,000 and whatever growth, again, occurred in [the Retirement Accumulation Plan] account."[1] Husband's attorney argued that the agreement unambiguously limited the wife to receive $19,000 and that any deviation would be tantamount to "rewriting the contract." The trial judge ruled that the value of wife's share was $19,000, the amount specified in the agreement.

## ISSUES ON APPEAL

In her brief, wife lists four questions and presents seven questions. The only issue raised at the hearing and preserved for appeal was the value of wife's share of husband's Retirement Accumulation Plan. Wife's attorney signed the QDRO "Seen and Objected," noting that the trial judge failed to include "earnings (dividends, interest, gains and losses) from July 31, 1989 to the

---

[1] Although wife moved for entry of two QDRO's, and the trial judge entered orders for both plans, the only order wife objected to and appeals from is the QDRO for the Retirement Accumulation Plan.

date of distribution because the failure of [husband's] attorney, who drafted the agreement, to provide [wife] with normal gains and losses usually given to the Alternate Payee." Therefore, the only issue before this Court is whether the trial judge erred in including in the QDRO the value specified in the Agreement. See Rule 5A:18. See also Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) ("The Court of Appeals will not consider an argument on appeal which was not presented to the trial court.").

## DISCUSSION

"Property settlement agreements are contracts subject to the same rules of formation, validity, and interpretation as other contracts." Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 267 (1997).

> "It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984) (quoting Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)). "A corollary to [this] principle is that courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." Id.

Code § 20-107.3(K)(4) allows courts to issue qualified domestic relations orders to "effectuate the expressed intent of the [decree]." A QDRO may not "modify a final divorce decree simply to adjust its terms in light of the parties' changed circumstances"; it must be "consistent with the substantive provisions of the original decree." Caudle v. Caudle, 18 Va. App. 795, 798, 447 S.E.2d 247, 249 (1994); see also Fahey v. Fahey, 24 Va. App. 254, 256-57, 481 S.E.2d 496, 497 (1997) *(en banc)* (reversing an order that amended a QDRO and

- 3 -

holding that "the court was without authority to substantively modify [the QDRO] simply to redress [a] changed circumstance").

The record in this case established that the parties entered into an unequivocal, unambiguous agreement specifying a sum certain that wife was to receive. Thus, the trial judge was without authority to substantively modify the QDRO merely because the circumstances now disadvantage one of the parties. To do so would be to rewrite the parties' contract. Accordingly, we hold that the trial judge did not err in entering the QDRO, which was consistent with the Agreement incorporated in the final decree, and we summarily affirm the decision.

<u>Affirmed.</u>