UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Beales, Alston and Senior Judge Willis
Argued at Alexandria, Virginia


SUSAN W. FOREST

                                                              MEMORANDUM OPINION[*] BY
v.        Record No. 0836-12-4                        JUDGE RANDOLPH A. BEALES
                                                              MARCH 12, 2013
JOHN P. FOREST, II, EXECUTOR OF
 THE ESTATE OF CHRISTOPHER M. FOREST


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dennis J. Smith, Judge

         Joseph A. Condo (Elizabath C. Szabo; The Condo Law Group, P.C.,
         on briefs), for appellant.

         John P. Forest, II (StahlZelloe, P.C., on brief), for appellee.


        Susan W. Forest (wife) appeals the trial court's order finding that it lacked authority

under Code § 20-107.3(K)(4) to enter a qualified domestic relations order (QDRO) or to modify

the final decree of divorce between wife and Christopher M. Forest (husband) so as to permit

entry of wife's requested QDRO.  John P. Forest, II, Esq. (executor)[1] has represented husband's

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Executor argues that this appeal must be dismissed due to what he contends is a defect
in the pleadings filed by wife because the captions of such pleadings have not identified executor
as acting in his capacity as the executor of the estate, as executor contends was required under
Code § 8.01-6.3(A).  We disagree.  "Any pleading filed that does not conform to the
requirements of subsection A but otherwise identifies the proper parties shall be amended on the
motion of any party *or by the court on its own motion*.  Such amendment relates back to the date
of the original pleading."  Code § 8.01-6.3(B) (emphasis added).  Furthermore, we observe that,
to the extent executor raises an issue of personal jurisdiction,

         "[a]n appearance for any other purpose than questioning the
         jurisdiction of the court - because there was no service of process,
         or the process was defective, or the service thereof was defective,
         or the action was commenced in the wrong county, or the like - is

estate in the trial court and now on appeal in the capacity of executor of the estate. For the reasons explained below, we reverse the trial court's order and remand the matter to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND[2]

On June 27, 2011, the trial court entered a final decree of divorce between Mr. and Mrs. Forest, which incorporated the provisions of their May 5, 2011 marital settlement agreement[3] (MSA).[4] The portion of the MSA that is pertinent to this appeal states:

### RETIREMENT ACCOUNTS

> 15. a. (i) *The Wife's individual retirement account (IRA) and the Husband's 401(K) plan, shall be equalized through a transfer from the Husband's 401(k) plan of the amount necessary to effect such equalization, based on the values as of the date of the separation*, to-wit: April 1, 2010, plus any appreciation or less any depreciation from the date of separation to the time of transfer, *said transfer to be effected through the entry of one or more Qualified Domestic Relations Orders ("QDROs")*, such transfer to

---

general and not special, although accompanied by the claim that the appearance is only special."

Lyren v. Ohr, 271 Va. 155, 159, 623 S.E.2d 883, 884 (2006) (quoting Norfolk & Ocean View Ry. Co. v. Consolidated Tpk. Co., 111 Va. 131, 136, 68 S.E. 346, 348 (1910)).

[2] Under the settled standard of review, the facts are viewed in the light most favorable to executor, who was the prevailing party in the trial court. However, the facts that are pertinent to the resolution of this appeal are essentially undisputed.

[3] An agreement of this type is commonly called a property settlement agreement (abbreviated as PSA). See, e.g., Virostko v. Virostko, 59 Va. App. 816, 819, 722 S.E.2d 678, 680 (2012). In this opinion, we use the term marital settlement agreement (and its corresponding abbreviation of MSA) because that is the term used by the parties in this case.

[4] Wife and husband were married in August 1996 and during the marriage had three children, who are still minors. Pursuant to the terms of the MSA, husband was ordered to pay child support under the divorce decree. Although the MSA plainly states that it "shall be binding upon the parties, their heirs, administrators, executors and assigns," there is no argument raised on appeal that husband's estate has accrued a child support arrearage that must be satisfied by the estate.

be in satisfaction of the Husband's marital interest in said plans and/or accounts.

(Emphasis added).

It is undisputed for purposes of this appeal that husband's "401(K) plan" referenced in the MSA was intended to be husband's account with Morgan Stanley Smith Barney LLC (Morgan Stanley account). The parties also do not dispute that a $26,000 transfer from husband's Morgan Stanley account to wife's IRA was necessary to achieve the equalization of account balances that was agreed upon in the MSA and incorporated into the final decree.

Before a QDRO dividing the funds in husband's Morgan Stanley account could ever be entered, however, it was discovered that husband had secretly withdrawn the vast majority of the funds from that account. Only about $6,000 remained in the Morgan Stanley account. Given that the entry of a QDRO dividing the small remaining balance in the Morgan Stanley account would have been utterly ineffectual in achieving the agreement to equalize husband's and wife's retirement accounts, husband agreed to direct the Morgan Stanley plan administrator to release those remaining funds to wife. However, husband's assignment to wife of the remaining funds in his Morgan Stanley account still left about a $20,000 shortfall based on the terms of the MSA.

In light of this shortfall, wife's counsel and husband's counsel in the divorce litigation (Stephen Halfhill, Esq.) then apparently agreed in principle on a QDRO pertaining to a different retirement account – husband's Deseret Mutual Thrift Plan (Deseret Mutual account). It appears from the record on appeal that the Deseret Mutual account contained about $14,000 – *still* not enough to cover the entirety of the shortfall caused by husband's withdrawal of the funds from the Morgan Stanley account – and that a draft QDRO pertaining to the Deseret Mutual account (the Deseret Mutual QDRO) was approved by the plan administrator. The record establishes that

- 3 -

the draft Deseret Mutual QDRO was sent to Mr. Halfhill's office for his approval.[5] However, before the Deseret Mutual QDRO was ever filed in the trial court, husband committed suicide.

Following husband's death, wife moved on January 27, 2012 for the trial court to enter the Deseret Mutual QDRO. Executor appeared at a February 10, 2012 hearing in the trial court. The trial court granted wife's unopposed motion to substitute executor as the party defendant in this matter, deferred action on wife's motion to enter the Deseret Mutual QDRO, and granted executor leave to file a responsive pleading.

The trial court then considered the merits of wife's motion for entry of the Deseret Mutual QDRO at a hearing on February 24, 2012.[6] The trial court found that it lacked authority under Code § 20-107.3(K)(4) to enter the Deseret Mutual QDRO because the disputed portion of the MSA never mentioned the Deseret Mutual account, but instead only referenced the Morgan Stanley account. The trial court also found that it "can't modify the original order," i.e., the final divorce decree between wife and husband, which incorporated the MSA. The trial court explained:

---

[5] The record contains an email exchange between wife's counsel and Mr. Halfhill concerning the Deseret Mutual QDRO. On January 11, 2012, Mr. Halfhill informed wife's counsel via email that he would "review the QDRO and if I have no objections, I will endorse it and file it with the [trial court]." Husband's death occurred on or shortly after January 11, 2012. Mr. Halfhill did not participate in any subsequent proceedings – except for filing one written response in which he did not deny wife's assertion that he intended to file the Deseret Mutual QDRO in the trial court prior to husband's death, but in which Mr. Halfhill also maintained that he lacked authority after husband's death to represent the estate. Therefore, while it appears that husband and wife had essentially agreed before husband's death that the Deseret Mutual QDRO could be entered to compensate for husband's surreptitious depletion of the Morgan Stanley account, wife on appeal does not rely on the existence of any final agreement between wife and husband to enter the Deseret Mutual QDRO.

[6] Contrary to executor's contention in the trial court and now on appeal, the trial court's consideration of the merits of wife's motion for entry of the Deseret Mutual QDRO was not an improper revival of the divorce litigation between wife and husband – given that husband's death occurred *after* the entry of the final divorce decree. See Sprouse v. Griffin, 250 Va. 46, 50, 458 S.E.2d 770, 772 (1995) (explaining that "a divorce suit abates when one party dies while the suit is pending and before a decree on the merits").

[T]he Code restricts what I can do. When the parties enter into an agreement saying X, I can't now come in and say, well, you changed X to Y, so I'm going to change that to Y. I'm not allowed to do that under that Code section.

*　　*　　*　　*　　*　　*　　*

I'm not ruling on whether there was any subsequent agreement between the parties. What I'm ruling on is based upon the motion as presented right now to enter a QDRO to change [the MSA] to specify the Deseret plan. Without any agreement being before the court, it is improper.

After the trial court denied wife's motion for reconsideration,[7] wife appealed to this Court.

## II. ANALYSIS

On appeal, wife argues that the trial court committed reversible error under Virginia law[8] when it found that it lacked authority under Code § 20-107.3(K) to grant wife's motion to enter the Deseret Mutual QDRO or, in the alternative, to modify the final divorce decree to permit the entry of that QDRO. Under settled principles, "'[w]e review the trial court's statutory interpretations and legal conclusions *de novo*.'" Craig v. Craig, 59 Va. App. 527, 539, 721 S.E.2d 24, 29 (2012) (quoting Navas v. Navas, 43 Va. App. 484, 487, 599 S.E.2d 479, 480 (2004)); see Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003). Applying this standard of review, we conclude that the trial court erred in finding that it could not modify the

---

[7] In her motion for reconsideration, wife requested that the trial court enter the Deseret Mutual QDRO or, in the alternative, modify the final decree to allow for the entry of the Deseret Mutual QDRO. Wife contended that Code § 20-107.3(K)(4) permits modification of a final decree so long as the modification reflects the expressed intent of the final decree.

[8] Wife also argues on appeal that the trial court erred under the federal Pension Protection Act of 2006 when it refused to enter the Deseret Mutual QDRO. The trial court expressly declined to consider whether the Deseret Mutual QDRO could be entered under federal law – given its finding that this QDRO could not be entered under Virginia law. On remand, the trial court will have the opportunity to consider the propriety of entering the Deseret Mutual QDRO pursuant to federal law – and to make any factual findings that might be necessary to make a decision on that issue.

- 5 -

final decree under Code § 20-107.3(K)(4) for the limited purpose of enabling the entry of the Deseret Mutual QDRO. Even viewing the evidence in the light most favorable to the executor, as we must since he was the prevailing party below, entering the Deseret Mutual QDRO is permissible under Virginia law because doing so would effectuate the expressed intent of the final decree – which, pertaining to the issue on appeal here, is to grant wife with a vested property right.

A. CODE § 20-107.3(K)(4)

"The jurisdiction of the court to enter orders effectuating and enforcing its equitable distribution order entered pursuant to Code § 20-107.3 is limited." Turner v. Turner, 47 Va. App. 76, 80, 622 S.E.2d 263, 265 (2005). Code § 20-107.3(K)(4) "creates a limited exception to the strict directive of Rule 1:1," which states that a final order cannot be modified more than twenty-one days after its entry. Caudle v. Caudle, 18 Va. App. 795, 797, 447 S.E.2d 247, 249 (1994).

Code § 20-107.3(K)(4) states:

> The court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority to:
>
> \* \* \* \* \* \* \*
>
> *Modify any order* entered in a case filed on or after July 1, 1982, *intended to affect or divide any pension, profit-sharing or deferred compensation plan or retirement benefits* pursuant to the United States Internal Revenue Code or other applicable federal laws, only for the purpose of establishing or maintaining the order as a qualified domestic relations order or *to revise or conform its terms so as to effectuate the expressed intent of the order*.

(Emphasis added). "Such modification [under Code § 20-107.3(K)(4)] must be 'consistent with the substantive provisions of the original decree' and not 'simply to adjust its terms in light of the parties' changed circumstances.'" Williams v. Williams, 32 Va. App. 72, 75, 526 S.E.2d

- 6 -

301, 303 (2000) (quoting Caudle, 18 Va. App. at 798, 447 S.E.2d at 249); see also, e.g., Fahey v. Fahey, 24 Va. App. 254, 256-57, 481 S.E.2d 496, 497 (1996).

The plain language of Code § 20-107.3(K)(4) and this Court's decisions applying it state that relief granted under this statute must be consistent with "the expressed intent" of a prior equitable distribution order, so as to effectuate that expressed intent.

> Under Code § 20-107.3(K)(4), an equitable distribution order "intended to affect or divide any pension or retirement benefits pursuant to . . . federal laws . . . [may be modified by subsequent order] only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate *the expressed intent* of the order."

Turner, 47 Va. App. at 80, 622 S.E.2d at 265-66 (emphasis added) (quoting Code § 20-107.3(K)(4)); see Caudle, 18 Va. App. at 798, 447 S.E.2d at 249 (explaining that Code § 20-107.3(K)(4) authorizes a trial court "to reinstate an equitable distribution decree on its docket in order to make the terms of the retirement or pension provisions 'effectuate *the expressed intent*' of the original decree" (emphasis added) (quoting Code § 20-107.3(K)(4))).

Accordingly, we look to the expressed intent of the final divorce decree, which incorporated the MSA between wife and husband. "'The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.'" Irwin v. Irwin, 47 Va. App. 287, 293, 623 S.E.2d 438, 441 (2005) (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)). "In construing the terms of a property settlement agreement, just as in construing the terms of any contract, we are not bound by the trial court's conclusions as to the construction of the disputed provisions." Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 268 (1997) (internal quotations and citations omitted).

B.  EXPRESSED INTENT OF THE MSA INCORPORATED INTO THE FINAL DECREE

The portion of the MSA that is pertinent to this appeal states:

> *The Wife's individual retirement account (IRA) and the Husband's 401(K) plan, <u>shall be equalized</u> through a transfer from the Husband's 401(k) plan of the amount necessary to effect such equalization, <u>based on the values as of the date of the separation</u>,* to-wit:  April 1, 2010, plus any appreciation or less any depreciation from the date of separation to the time of transfer, said transfer to be effected through the entry of one or more Qualified Domestic Relations Orders ("QDROs"), such transfer to be in satisfaction of the Husband's marital interest in said plans and/or accounts.

(Emphasis added).

The expressed intent of the disputed portion of the MSA is to grant wife an interest in a discrete and identifiable portion of husband's property.  The method for determining wife's property interest under the MSA is to compare the value of wife's IRA to the value of husband's Morgan Stanley account – based on the respective values of those accounts as they were valued on the date of the separation.  Wife's property interest under the MSA is the amount of money necessary *to equalize* those account values *as of the date of separation* (i.e., one-half of the difference between those account values as they were valued on the date of the separation).  It is undisputed for purposes of appeal that "the amount necessary to effect such equalization" under the terms of the MSA is approximately $26,000.

Furthermore, it is well established that "'property rights and interests [become] vested in the parties when they [agree] upon them, set them forth in a valid separation agreement, and [have] them incorporated into their final divorce decree.'"  Irwin, 47 Va. App. at 294, 623 S.E.2d at 441 (quoting Himes v. Himes, 12 Va. App. 966, 970, 407 S.E.2d 694, 697 (1991)).  "Such an agreement creates vested property rights in the parties by virtue of the judicial sanction and determination of the court" and constitutes "a final adjudication of the property rights of the

- 8 -

parties" to the divorce action. Shoosmith v. Scott, 217 Va. 290, 292, 227 S.E.2d 729, 731 (1976), aff'd on rehearing, 217 Va. 789, 793, 232 S.E.2d 787, 789 (1977)).

Therefore, we conclude for purposes of this appeal that "the expressed intent" of the final decree is to establish wife's property right, which vested when the final decree incorporated the MSA between wife and husband. Code § 20-107.3(K)(4). Based on the record before us, it is undisputed that wife's property right amounts to approximately $26,000. Moreover, while husband's depletion of funds rendered impossible the MSA-required transfer of approximately $26,000 *from his Morgan Stanley account* to wife's IRA, his actions did not thwart wife's property right expressed in, and established by, the final decree.[9] Wife's *actual property right* remains unaffected by husband's surreptitious withdrawals of the Morgan Stanley account funds, which occurred contrary to the expressed intent of the marital settlement agreement that husband had signed and the final decree.[10] See Higgins v. McFarland, 196 Va. 889, 895, 86 S.E.2d 168, 172 (1955) ("Such a contract so approved is a final adjudication of the property rights of the parties and cannot be changed by them without the approval of the court.").

### C. AVAILABILITY OF A REMEDY UNDER CODE § 20-107.3(K)(4)

> Under Code § 20-107.3(K)(4), an equitable distribution order "intended to affect or divide any pension or retirement benefits pursuant to . . . federal laws . . . [may be modified by subsequent order] only for the purpose of establishing or

---

[9] To hold otherwise would conceivably permit a party to enter into a property settlement agreement directing the entry of a QDRO to divide a retirement account – and then thwart the terms of the agreement by depleting that retirement account's funds before a QDRO could be entered. Our precedents neither encourage approbation and reprobation nor countenance fraudulent behavior.

[10] While executor argues that Code § 20-107.3(K)(4) does not apply here, executor acknowledges that the terms of the MSA are binding on him as executor of husband's estate and suggests that wife could perhaps seek some alternative form of relief – such as a rule to show cause (directed to him in his capacity as executor of the estate) or a debts and demands hearing before a commissioner of accounts. We offer no opinion on the availability or the effectiveness of any alternative remedies suggested by executor, as this appeal only concerns wife's request for relief under Code § 20-107.3(K)(4).

> maintaining the order as a qualified domestic relations order or to
> revise or conform its terms so as to effectuate the expressed intent
> of the order."

Turner, 47 Va. App. at 80, 622 S.E.2d at 265-66 (alterations in original) (quoting Code § 20-107.3(K)(4)).  The final decree certainly affected wife's retirement benefits, i.e., her IRA. The final decree, which incorporated the MSA between wife and husband, constituted "a final adjudication" of wife's right to receive an approximately $26,000 transfer of funds to her IRA. Higgins, 196 Va. at 895, 86 S.E.2d at 172; see also Shoosmith, 217 Va. at 292, 227 S.E.2d at 731.  In the trial court and now before this Court on appeal, wife has not sought anything more than the entry of an order under Code § 20-107.3(K)(4) that is consistent with this adjudicated property right.[11]

In Hastie v. Hastie, 29 Va. App. 776, 514 S.E.2d 800 (1999), this Court stated:

> We have previously held that orders that alter critical terms of the
> contract [incorporated in the final decree], *such as timing or
> amount of payments*, exceed the authority granted under Code
> § 20-107.3(K)(4).  See, e.g., Fahey, 24 Va. App. at 256, 481 S.E.2d
> at 497 (holding that the division of the actual value of a Keogh
> account rather than the agreed value was a substantive change);
> Decker v. Decker, 22 Va. App. 486, 495, 471 S.E.2d 775, 779
> (1996) (holding that reduction in spousal support by amount of
> mortgage payments on recipient spouse's house was a substantive
> change).

Id. at 781, 514 S.E.2d at 803 (emphasis added); see Turner, 47 Va. App. at 80-81, 622 S.E.2d at 266 (same).

This case is unlike Hastie, the cases cited in Hastie, and other cases where movants sought to use a trial court's continuing jurisdiction under Code § 20-107.3(K)(4) to alter *the timing or amount* of payments of retirement benefits that were awarded in a final decree.  See,

---

[11] In fact, as explained *supra*, it appears that even the entry of the Deseret Mutual QDRO would not fully satisfy the terms of the MSA that wife and husband negotiated, as the Deseret Mutual account does not have enough funds to cover the shortfall caused by husband's near-depletion of the Morgan Stanley account.

e.g., Hastie, 29 Va. App. at 781, 514 S.E.2d at 803; Wilson v. Wilson, 25 Va. App. 752, 492 S.E.2d 495 (1997); Caudle, 18 Va. App. at 797-98, 447 S.E.2d at 249-50. In those cases, the movants sought relief that was *inconsistent* with the final decree in a manner that would have altered the parties' substantive rights.

For example, in Caudle, the final divorce decree stated that Mrs. Caudle would begin receiving a portion of Mr. Caudle's retirement benefits when Mr. Caudle began receiving those benefits from the plan administrator. Caudle, 18 Va. App. at 796-97, 447 S.E.2d at 249. When Mr. Caudle retired earlier than expected, he moved for the entry of a QDRO that specified Mrs. Caudle would not begin receiving those retirement benefits until several years after Mr. Caudle actually began receiving them. Id. at 797, 447 S.E.2d at 249. This Court reversed the trial court's decision to grant Mr. Caudle's motion. It was in this light that this Court held in Caudle that Code § 20-107.3(K)(4) does not "allow a court to modify a final divorce decree simply to adjust its terms in light of the parties' changed circumstances." Id. at 798, 447 S.E.2d at 249.

Whereas Mr. Caudle's changed circumstances in Caudle did not entitle him to relief under Code § 20-107.3(K)(4), wife's own circumstances now before us in this case have not changed. Wife seeks relief under Code § 20-107.3(K)(4) for *the very same property right* that vested when the final decree incorporated the MSA. In this respect, the circumstances here are more similar to those in Recker v. Recker, 48 Va. App. 188, 194-95, 629 S.E.2d 191, 195 (2006), where the wife in that case invoked Code § 20-107.3(K)(4) simply "to receive the amount of retirement benefits previously decreed." Here, the trial court's continuing jurisdiction under Code § 20-107.3(K)(4) to enter an order effectuating wife's vested property right under the final decree was not hindered simply because that property right could not be fully effectuated from the meager funds remaining in the retirement account mentioned in the MSA – especially given that husband depleted his Morgan Stanley account before the QDRO required by the MSA was

- 11 -

ever able to be entered. Furthermore, this depletion of the account occurred through no fault of wife, according to the record before us on appeal.

This Court's decision in Williams is instructive on the type of limited modification to a final decree that Code § 20-107.3(K)(4) permits. There, Mrs. Williams was awarded one-half of Mr. Williams' monthly pension installments. Williams, 32 Va. App. at 74, 526 S.E.2d at 302. However, the QDRO that was entered applied to only one part of Mr. Williams' pension; therefore, Mrs. Williams began receiving only a small percentage of the pension payments that were due to her under the final decree. Id. at 75, 526 S.E.2d at 302. The trial court modified the final decree under Code § 20-107.3(K)(4), directing Mr. Williams to pay the remaining balance due to Mrs. Williams each month directly. This Court affirmed the trial court's decision in Williams, explaining:

> The trial court's May 5, 1999 *nunc pro tunc* order revised the amended final decree to conform with the substantive decision expressed in the decree that the wife receive half of the husband's entire pension benefits. It did so by ordering the husband to pay 50% of his Tier I pension benefits directly to the wife, the amount not covered by the QDRO. This modification was not a substantive modification. *The trial court never modified the percentage or amount due the wife.* The modification accomplished what the amended final order directed, but which the QDRO did not fully accomplish. *The modification changed no substantive rights but merely adjusted procedural steps to effect the expressed intent of the order.* The trial court could have made the procedural adjustments by amending the QDRO, but Code § 20-107.3(K)(4) also permitted it to make them by modifying the amended final decree.

Id. at 76, 526 S.E.2d at 303 (emphasis added).

As in Williams, wife here seeks to adjust the procedural steps necessary to effectuate the expressed intent of the final decree, which incorporated the MSA between wife and husband. Based on the record before us, even when viewed in the light most favorable to the executor, as the prevailing party below, we can locate no evidence or indication from the record

- 12 -

demonstrating that entry of the Deseret Mutual QDRO would change any party's substantive rights.[12]  Given that wife only seeks to effectuate the identical property right that is expressed in the MSA – which vested with that agreement's incorporation in the final decree – Code § 20-107.3(K)(4) permits the modification of the final decree that wife requests under the circumstances of this particular case.

## D.  ATTORNEY'S FEES AND COSTS

Pursuant to Paragraph 19(b) of the MSA, we award wife the amount of her attorney's fees and costs associated with the successful litigation of this appeal – the amount of which shall be determined by the trial court on remand.  Furthermore, if the trial court determines on remand that the Deseret Mutual QDRO is able to be entered under federal law, then the trial court shall also determine wife's entitlement to an award of costs and attorney's fees under Paragraph 19 of the MSA that reflects wife's costs and attorney's fees accrued in the trial court – throughout the litigation of this matter here – for the purpose of pursuing the entry of that QDRO.

## III.  CONCLUSION

The relief wife requests under Code § 20-107.3(K)(4) pertains to the identical vested property right that was embodied in the expressed intent of the MSA between wife and husband – which was duly incorporated into the final decree.  Code § 20-107.3(K)(4) did not prohibit the trial court from modifying the final divorce decree for the limited purpose of effectuating the expressed intent of the final decree by enabling the entry of the Deseret Mutual QDRO. Accordingly, we reverse the judgment of the trial court and remand the matter for further

---

[12] In the trial court, executor alluded to husband's estate having amassed significant debts – but no evidence of those debts was ever offered for admission into the record or proffered by executor below.  No creditor sought to intervene in this matter.  Moreover, executor made no argument in the trial court establishing that any creditor of husband's estate could even access the funds in husband's Deseret Mutual account under federal or state law, and we do not consider that issue *sua sponte* in this appeal.

proceedings consistent with this opinion, including consideration of whether the Deseret Mutual

QDRO may be entered under applicable federal law.

<u>Reversed and remanded.</u>