COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Chafin and Decker
Argued at Salem, Virginia


FRANCENE K. MEADE (SOWARDS)

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1942-15-3                      JUDGE TERESA M. CHAFIN
                                                    JULY 19, 2016

LENVILLE JESSIE SOWARDS


            FROM THE CIRCUIT COURT OF WISE COUNTY
                        John C. Kilgore, Judge

        Julia L. McAfee (Carl E. McAfee, PC, on brief), for appellant.

        No brief or argument for appellee.


        In this domestic relations appeal, Francene K. Meade challenges a decision from the

Circuit Court of Wise County clarifying her interest in the disability retirement benefits received

by her ex-husband, Lenville Jessie Sowards.  Meade contends that the circuit court erred by

calculating her marital share of Sowards's retirement benefits based on the assumption that

Sowards retired at the minimum retirement age allowed by his employer rather than the actual

date of his retirement.  By basing its calculation on Sowards's minimum retirement age, Meade

argues that the circuit court impermissibly changed the method of calculating her marital share of

Sowards's retirement benefits and altered the substantive terms of the prior orders addressing the

division of those benefits.  For the reasons that follow, we agree with Meade's argument and

reverse the circuit court's decision.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

"When reviewing a [circuit] court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). In the present case, however, most of the relevant facts are undisputed.

Meade and Sowards married on September 11, 1977. During the marriage, Sowards was employed by the United States Postal Service ("USPS") and, as a federal employee, he participated in the Federal Employees Retirement System ("FERS"). Meade and Sowards separated on December 13, 1997, and commenced divorce proceedings. They were divorced by a final decree entered by the circuit court on November 19, 1999.

Among other things, the November 19, 1999 final decree divided the parties' marital property.[1] In addressing the division of the parties' retirement plans, the final decree stated, in pertinent part, "that each party is entitled to one-half of the other party's retirement and said retirement shall be valued as of the date of the separation of the parties." Another order entered on April 28, 2000 provided further clarification regarding the division of the retirement benefits.[2] That order explained that:

> Francene (Sowards) Meade . . . is awarded fifty percent (50%) of the . . . F.E.R.S. account of Lenville Jessee Sowards . . . as of 12-13-97 and which shall include any interest earned or accrued on said proportional share earned from 12-13-97 until the date of distribution by the plan administrator.

---

[1] Neither the final decree nor the record suggested that the parties had a property settlement agreement in this case.

[2] Although both the November 19, 1999 final decree and the April 28, 2000 order reference prior *ore tenus* hearings before the circuit court, transcripts from these hearings or statements of facts regarding them are not in the record.

Between the date of the parties' marriage and December 13, 1997 (the date of the parties' separation), Sowards had worked for the USPS and earned FERS benefits for 128 months.

Sometime after the parties divorced, Sowards sustained an injury to his rotator cuff. Based on that injury, Sowards was determined to be disabled on January 18, 2007. At that time, Sowards was fifty years old and he had worked for the USPS for a total of 224 months. Due to his disability, Sowards began receiving disability retirement benefits. Although a copy of the April 28, 2000 order regarding Meade's interest in Sowards's retirement benefits had been accepted by the United States Office of Personnel Management ("OPM"), the agency responsible for the administration of retirement benefits for federal employees, Meade did not receive any portion of Sowards's disability retirement benefits for six years.

On October 2, 2013, OPM informed Meade that Sowards was receiving retirement benefits. Based on the April 28, 2000 order, OPM determined that Meade was entitled to 28.57% of Sowards's disability retirement benefits. OPM explained that it calculated this percentage by dividing the 128 months of Sowards's federal service during his marriage to Meade by the entire 224 months of his service. This division resulted in a fraction of 57.14%, which represented the portion of Sowards's retirement benefits earned during the parties' marriage. OPM multiplied this fraction by Meade's 50% interest in the marital portion of Sowards's benefits to determine that Meade was entitled to receive 28.57% of Sowards's monthly payments. OPM informed Meade that she would receive a monthly payment of $538.83 based on this percentage, as well as a retroactive payment of $43,952.16 to compensate her for the payments that she should have been receiving from the date of Sowards's retirement.

After OPM informed Sowards that it would begin deducting Meade's share of his benefits each month, he filed a petition to clarify the prior orders concerning the division of his retirement benefits. In his motion, Sowards argued that OPM had simply "misunderstood" the

- 3 -

April 28, 2000 order, and he asked the circuit court to determine the percentage of Meade's interest in his retirement benefits.[3] Meade moved to dismiss Sowards's petition. She also filed a memorandum addressing its merits. Multiple hearings were then held in the circuit court regarding this issue, in which both parties presented evidence and authority supporting their positions.[4]

After reviewing the evidence and authority presented by the parties, the circuit court granted Sowards's petition to clarify the April 28, 2000 order. The circuit court concluded that Meade's interest in the retirement benefits should have been calculated based on the minimum age that Sowards could have retired rather than the date of his actual retirement and that OPM had miscalculated Meade's interest in Sowards's retirement benefits by basing its calculation on the date that Sowards was declared disabled.[5]

Citing 5 C.F.R. § 842.202, the circuit court determined that Sowards could have retired at age fifty-six based on his years of service and that he would have accumulated 296 months of service with USPS if he had retired when he reached that age. The circuit court then calculated

---

[3] Sowards also explained that OPM was deducting an additional amount of money from his retirement benefits each month to recoup the retroactive payment owed to Meade. Due to this additional deduction, Sowards complained that Meade was actually receiving more money from OPM each month than he was. While the propriety of OPM's additional deduction from Sowards's monthly retirement benefits is not before this Court on appeal, we note that Sowards could have avoided the additional deduction by ensuring that Meade was timely compensated for her interest in his retirement benefits.

[4] Notably, Meade presented testimony from an expert concerning the equitable distribution of retirement benefits. After reviewing the prior court orders addressing the issue, the expert concluded that OPM had correctly calculated Meade's interest in Sowards's retirement benefits. The circuit court requested a written report from this expert, and it expressly considered this report in reaching its decision in this case. A copy of the report was included in the record.

[5] The circuit court also held that Sowards's "disability retirement benefits are deemed retirement benefits as that term is used in the . . . April 28, 2000 Order and subject to division as marital property." This decision is not challenged on appeal and is not disturbed by this opinion.

Meade's interest in Sowards's retirement benefits based on the assumption that he retired with 296 months of total service rather than the 224 months of his actual service. Using the same formula employed by OPM, the circuit court concluded that Meade was entitled to 21.62% of Sowards's retirement benefits and ordered OPM to base its future payments to her on that percentage. The circuit court then determined that Meade had received $14,079.24 in excess payments from OPM, and ordered OPM to reduce her monthly benefit by $117.33 until the excess payment was fully recovered. This appeal followed.[6]

## II. ANALYSIS

On appeal, Meade contends that the circuit court impermissibly modified the prior orders addressing the distribution of Sowards's retirement benefits by assuming that he retired on a date later than the date of his actual retirement. Meade argues that the circuit court's use of the assumed retirement date reduced her interest in Sowards's retirement benefits and, therefore, changed the substance of the original orders. As Meade's arguments involve questions of law concerning the interpretation of statutes and the circuit court's jurisdiction to modify the prior

---

[6] We note that the parties in this case submitted a written statement of facts that was signed by the circuit court judge's secretary (who was also a deputy clerk) rather than the circuit court judge. The secretary signed the circuit court judge's name to the statement of facts and indicated that she had done so "by permission." Pursuant to Rule 5A:8(c)(2), a written statement of facts only becomes part of the record when it is signed by a judge. See also Mayhood v. Mayhood, 4 Va. App. 365, 368-69, 358 S.E.2d 182, 184 (1987).

We are not required to determine whether the secretary's signature effectively constituted the signature of the circuit court judge because the rest of the record independently provides an adequate basis to resolve the issues presented in this case. The circuit court's November 5, 2015 order granting Sowards's petition to clarify the prior orders addressing the division of his retirement benefits contains a detailed recitation of the relevant facts concerning this case, and the written statement of facts filed by the parties does not further develop the record by providing significant additional facts beyond those outlined in the circuit court's order. See Carlton v. Paxton, 14 Va. App. 105, 111-12, 415 S.E.2d 600, 603 (1992) (an appellate court may rely on facts outlined in the trial court's written decision in the absence of a transcript or written statement of facts filed by the parties).

orders, we apply a *de novo* standard of review in this case. See Craig v. Craig, 59 Va. App. 527,

539, 721 S.E.2d 24, 29 (2012). Applying this standard, we agree with Meade's argument.

> The jurisdiction of the court to enter orders effectuating and enforcing its equitable distribution order entered pursuant to Code § 20-107.3 is limited. Equitable distribution orders become final within twenty-one days of entry. See Rule 1:1; see also Fahey v. Fahey, 24 Va. App. 254, 256, 481 S.E.2d 496, 497 (1997). Thereafter, the court's power to modify such orders is governed by statute. Under Code § 20-107.3(K)(4), an equitable distribution order "intended to affect or divide any pension or retirement benefits pursuant to . . . federal laws . . . [may be modified by subsequent order] only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order." See Wilson v. Wilson, 25 Va. App. 752, 757-58, 492 S.E.2d 495, 498 (1997).

Turner v. Turner, 47 Va. App. 76, 80, 622 S.E.2d 263, 265-66 (2005) (alteration in original).

"Code § 20-107.3(K)(4) does not, however, allow a court to modify a final divorce decree simply

to adjust its terms in light of the parties' changed circumstances." Id. at 80, 622 S.E.2d at 266.

Modifications that "alter critical terms of the [equitable distribution order], such as timing or

amount of payments, exceed the authority granted under Code § 20-107.3(K)(4)." Id. (alteration

in original) (quoting Hastie v. Hastie, 29 Va. App. 776, 781, 514 S.E.2d 800, 803 (1999)).

In the present case, the circuit court altered a substantive term of the prior orders

addressing the distribution of Sowards's retirement benefits by changing the method by which

Meade's interest in those benefits was calculated. See Prizzia v. Prizzia, 58 Va. App. 137, 169,

707 S.E.2d 461, 476 (2011) ("The method for valuing the marital share of a [retirement] plan is

certainly a critical term of an equitable distribution order."). By calculating Meade's marital

share of Sowards's retirement benefits based on a speculative future retirement date rather than

the date that he actually retired, the circuit court reduced Meade's interest in the benefits, and

consequently, also reduced the amount of her monthly payments from OPM.

We acknowledge that the final decree of divorce in this case does not explicitly explain the method of calculating Meade's interest in Sowards's retirement benefits. The order simply awards Meade half of Sowards's retirement benefits to be valued as of the date of their separation. Code § 20-107.3(G)(1), however, defines the term "marital share" as it is used in the context of the division of retirement benefits. That subpart of the statute provides that:

> The court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time. . . . "Marital share" means that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties, if at such time or thereafter at least one of the parties intended that the separation be permanent.

Code § 20-107.3(G)(1).

> While . . . retirement benefits may be structured in many forms, . . . the funds contemplated and thus included within the provisions of [Code § 20-107.3(G)], whether paid periodically or in lump sum, are funds paid or to be paid *upon cessation of employment* to the employee by his or her employer as a result of the employment as a means of deferred compensation.

Robinette v. Robinette, 10 Va. App. 480, 485, 393 S.E.2d 629, 632 (1990) (emphasis added). Accordingly, a spouse's marital share of retirement benefits is calculated based on the amount of time the pensioner spouse was employed during the marriage and "the total time the pensioner is employed *through the date of retirement*." Mann v. Mann, 22 Va. App. 459, 464, 470 S.E.2d 605, 607 (1996) (emphasis added).

Consistent with the precedent interpreting Code § 20-107.3(G)(1), the April 28, 2000 order addressing Meade's interest in Sowards's retirement benefits implied that her interest was intended to be calculated at the time that he actually retired from the USPS. That order clarified that Meade's portion of the benefits included "any interest earned or accrued on [her]

- 7 -

proportional share earned from [the date of the parties' separation] *until the date of distribution by the plan administrator*." (Emphasis added). Thus, it envisioned that the value of Meade's interest in Sowards's retirement benefits would be calculated based on the date that OPM distributed the benefits following his actual retirement.

OPM began distributing Sowards's retirement benefits following his retirement based on his disability.[7] It did not defer the distribution of those benefits to a future date on which he would have been eligible for non-disability-based retirement. In calculating Meade's marital share of Soward's retirement benefits, however, the circuit court assumed that Sowards retired at his minimum retirement age rather than the date of his actual retirement.

By calculating Meade's interest in Sowards's retirement benefits based on the date when he would have reached the minimum retirement age rather than the actual date of his retirement, the circuit court reduced the percentage of benefits that Meade received. Under both Virginia and federal law, Meade's interest in Sowards's retirement benefits is calculated by a formula expressed as a simple fraction, often referred to as the "coverture fraction." In this fraction, "[t]he number of years that the spouse was in the pension plan while in the marriage serves as the numerator and the [spouse's] total number of years in the pension plan serves as the denominator."[8] Turner, 47 Va. App. at 81, 622 S.E.2d at 266; see also 5 CFR § 838.621

---

[7] Under federal law, an employee is retired when he or she becomes disabled. See, e.g., 5 U.S.C.S. § 8451(a) (1)(A) ("An employee who completes at least 18 months of civilian service creditable under . . . [5 U.S.C.S. § 8411] and has become disabled *shall be retired* on the employee's own application or on application by the employee's agency." (emphasis added)). Furthermore, we note that all of the documents in the record from OPM concerning Sowards's retirement benefits refer to his "disability retirement."

[8] This fraction is used to "effectively exclude[] from the marital share the income earned by pre- and post-marital contributions to the pension." Wright v. Wright, 61 Va. App. 432, 455, 737 S.E.2d 519, 530 (2013) (quoting Mann, 22 Va. App. at 465, 470 S.E.2d at 607-08).

(defining a spouse's interest in federal retirement benefits under similar terms). Both the circuit court and OPM used this formula to calculate Meade's interest in Sowards's retirement benefits.

When the circuit court assumed that Sowards retired at his minimum retirement age rather than the date of his actual retirement, it increased the denominator of the coverture fraction and thereby reduced Meade's interest in the retirement benefits. Specifically, the circuit court increased the denominator by 72 months by assuming that Sowards retired with 296 months of total service rather than 224 months. This modification reduced Meade's interest in Sowards's retirement benefits by 6.95% and lowered the amount of her monthly payments by that percentage. Additionally, the modification significantly reduced the retroactive payment that Meade received from OPM.

While the parties in this case may not have foreseen that Sowards would be forced into early retirement due to disability, the circuit court could not substantively modify its equitable distribution award to address this change in circumstances. The present case is similar to Caudle v. Caudle, 18 Va. App. 795, 447 S.E.2d 247 (1994). In Caudle, the appellant was entitled to receive a portion of her husband's benefits from the Virginia Retirement System when he became eligible to receive them. Id. at 796-97, 447 S.E.2d at 249. When her husband developed a brain tumor and retired from his employment earlier than he had anticipated, he filed a petition to clarify the provision in the parties' final divorce decree addressing the division of his retirement benefits. Id. at 797, 447 S.E.2d at 249. The circuit court granted the petition and entered an order specifying that the appellant would not receive her portion of her husband's retirement until he reached the age of fifty-five. Id.

This Court concluded that the circuit court erred by delaying the appellant's payments, holding that the modification was an impermissible substantive change in the provisions of the final divorce decree. Id. Specifically, this Court reasoned that "[t]he fact that the parties may

- 9 -

have originally contemplated that [the husband's] retirement would occur [later] or that the court assumed this variable in computing the marital share of the retirement and the percentage to which the non-retiring spouse would be entitled is immaterial." Id. at 799, 447 S.E.2d at 250. As the final decree provided that the appellant would receive her percentage of the husband's retirement benefits when he became entitled to receive them, the circuit court could not modify the decree pursuant to Code § 20-107.3(K)(4) to delay the appellant's payments. Id.

In the present case, the prior orders concerning the division of Sowards's retirement benefits required Meade's interest in those benefits to be valued based on the date they were distributed. As OPM distributed Sowards's benefits following the date of his actual retirement, the circuit court erred by calculating Meade's interest based on the assumption that Sowards retired at a later date. Like in Caudle, the circuit court could not modify the valuation of Meade's interest in the retirement benefits to account for Sowards's early retirement.

By assuming that Sowards retired at his minimum retirement age rather than the date of his actual retirement, the circuit court impermissibly modified the method by which Meade's interest should have been calculated. As this modification reduced Meade's interest in Sowards's retirement benefits and her monthly payments from OPM, it modified the substantive terms of the prior orders and exceeded the authority provided by Code § 20-107.3(K)(4). Accordingly, the circuit court lacked jurisdiction to modify the prior orders. We reverse the circuit court's decision concerning the valuation of Meade's interest in Sowards's retirement benefits, and remand this case for the entry of an order consistent with this opinion valuing Meade's interest in the retirement benefits based on the date of Sowards's actual retirement.

Reversed and remanded.